**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| INDIANAPOLIS AIRPORT AUTHORITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01316-JMS-TAB |
| | ) | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) | |

## IAA'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL

Plaintiff Indianapolis Airport Authority ("IAA") brought this action asserting declaratory judgment and breach of contract claims in conjunction with insurance policies issued by Defendant Travelers Property Casualty Company of America's ("Travelers"). During construction of IAA's New Midfield Terminal Project, there was a collapse of some temporary shoring towers, causing steel members to drop, resulting in loss to the Project, including, but not limited to, damage to the steel members that had to be repaired and/or replaced; disruption to the original plan for completing the work on the Project; claims by contractors and consultants on the Project; and delay in completion of the Project (hereinafter, the "Steel Incident"). Travelers has denied significant portions of IAA's claims related to the Steel Incident.

Since late last year, the parties have engaged in extensive discovery, with each side serving multiple sets of written discovery. The instant dispute arises out of Travelers' refusal to produce documents responsive to IAA's First Requests for Production of Documents, based on various claims of privilege and relevance. In multiple instances, Travelers has asserted unclear or improper claims of attorney-client privilege or work product protection, and has further refused

to produce information relating to its subrogation investigation efforts and the amount of its reserves. These refusals are unsupported by the facts of this case as well as applicable law, and as such, IAA requests that the Court compel Travelers to produce these requested materials.

## FACTUAL BACKGROUND

IAA served its First Request for Production of Documents to Travelers on December 16, 2013. A true and accurate copy of IAA's First Request for Production of Documents to Travelers is attached hereto as **Exhibit A**. Travelers provided its responses and began producing documents responsive to these requests on February 12, 2014. A true and accurate copy of Travelers' Responses to IAA's First Request for Production to Travelers is attached hereto as **Exhibit B**. Travelers provided IAA with a privilege log associated with this document production, dated April 7, 2014, that was comprised of hundreds of entries that included various claims of privilege and irrelevance, but failed to provide key information relating to the identity of dozens of individuals listed on the log. IAA outlined this and other issues and deficiencies pertaining to Travelers' initial privilege log in a Rule 37-1 letter to Travelers dated May 1, 2014, and requested that Travelers either supplement its privilege log or provide the requested documents. A true and accurate copy of IAA's May 1, 2014 correspondence is attached hereto as **Exhibit C**. On May 16, 2014, Travelers responded to IAA's letter and provided a revised privilege log, as well as a limited supplemental production of documents. A true and accurate copy of Travelers' May 16, 2014 correspondence (without the accompanying log) is attached hereto as **Exhibit D**.

However, in its May 16 letter and accompanying revised privilege log, Travelers failed to adequately address several of the issues identified in IAA's initial May 1 Rule 37-1 letter. Accordingly, IAA responded again by letter dated June 25, 2014, in a further attempt to resolve

the parties' discovery dispute without court involvement. With this letter, IAA provided Travelers with a detailed breakdown of the various issues and deficiencies with Travelers' revised privilege log, and again requested that Travelers either revise its privilege log to provide more detail or produce the requested documents. A true and accurate copy of IAA's June 25, 2014 correspondence is attached hereto as **Exhibit E**. But Travelers' July 3, 2014 letter in response, attached hereto as **Exhibit F**, flatly refused to further address IAA's arguments relating to Travelers' privilege claims. After numerous requests by IAA to participate in a Rule 37-1 teleconference, Travelers agreed to participate in a call on July 23, 2014, to discuss the issues raised by IAA in its June 25, 2014 correspondence.

Travelers subsequently provided a revised privilege log (the "Second Amended Log"), as well as a limited supplemental production of documents, on August 5, 2014. A true and accurate copy of Travelers' August 5, 2014 correspondence, including the Second Amended Log, is attached hereto as **Exhibit G** and **Exhibit H**, respectively. The parties participated in a second Rule 37-1 teleconference on August 6, 2014, to discuss the issues raised by the Second Amended Log (among others), but no resolution was reached. Ultimately, the parties participated in a call with Magistrate Judge Baker on August 15, 2014, to address these and other outstanding discovery issues. *See* Dkt. 64.

Notwithstanding these efforts to resolve their discovery dispute, the parties remain at an impasse as to hundreds of the entries identifying documents that Travelers is withholding on the Second Amended Log. Specifically, Travelers continues to refuse to produce, or to provide an adequate justification for withholding, the following categories of documents and information: (1) alleged work product which was created days, weeks, or months after the Steel Incident, but prior to Travelers' July 10, 2013, denial of coverage as to certain aspects of IAA's claim; (2)

documents Travelers claims are protected by the attorney-client privilege without sufficient explanation to enable IAA to evaluate the validity of Travelers' claims; (3) information pertaining to Travelers' subrogation investigation; and (4) information related to the amount of loss reserves Travelers set in relation to IAA's claim. Because Travelers is not justified in withholding these categories of information, IAA respectfully requests that the Court compel Travelers to produce it.

## ANALYSIS

The party seeking to withhold responsive documents from discovery bears the burden of establishing that the requested materials are not discoverable, and must justify any claimed privilege on a document by document basis. *See, e.g., Becker v. Evansville*, 2014 WL 1706390, at *1 (S.D. Ind. Apr. 29, 2014) (citing Fed. R. Civ. P. 26(b)(5)(A), 26(c)(1)); *Cummins, Inc. v. Ace Am. Ins. Co.*, 2011 WL 1832813, at *2 (S.D. Ind. May 2, 2011); *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D. Ind. 1991) (citations omitted). Travelers' arguments fall short of this burden.

**I.      Travelers' Claim That It May Withhold Documents Created After January 31, 2007 On The Basis Of The Work Product Doctrine Is In Error.**

The "application of the work product rule in federal courts is governed by federal, not state, law." *Harper*, 138 F.R.D. at 658. The work product doctrine does not automatically apply to all documents created by an attorney; instead, the protection may be claimed only where such documents were created **because of** reasonably anticipated litigation. *Id*. at 660, 663. In other words, a document created in the ordinary course of business is not entitled to work product protection. *Id*. at 663. Moreover, a party is not entitled to protection under the work product doctrine unless it can demonstrate that it faced a "substantial and specific threat" of litigation at the time that the document was created, and that the material was produced "**because of** that

4

prospect of litigation and for no other purpose." *Id.* at 659-60 (emphasis in original) (internal citations omitted).

In the context of an insurance dispute, "[m]ost courts have held that documents constituting any part of a factual inquiry into or evaluation of a claim, undertaken in order to arrive at a claim decision, are produced in the ordinary course of an insurer's business and [are] not work product." *Id*. at 662. Furthermore, "[i]t is presumed that a document or thing **prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product**." *Id*. at 663 (emphasis added). "Likewise, anticipation of litigation is presumed unreasonable . . . before a final decision is reached on the claim." *Id.*

Here, Travelers has asserted that it began anticipating litigation on January 31, 2007 – a mere seven (7) days after the January 24, 2007 Steel Incident occurred – and has withheld a litany of documents based on its claim of "work product." *See* Travelers' Answer to IAA's Third Set of Interrogatories, attached hereto as **Exhibit I**, at 7; *see generally* Ex. H; *see also* IAA's Breakdown of Travelers' Assertions of Privilege in August 5, 2014 Privilege Log, attached hereto as **Exhibit J**, at 2 (for complete listing of documents improperly withheld on the basis of the work product doctrine).[1] In support of this position, Travelers claims that it sent IAA a "Reservation of Rights" letter on February 6, 2007, shortly after this January 31 date, and it is therefore justified in its work product assertions. *See* Ex. I at 7-8. However, the only communication from Travelers dated February 6, 2007 that IAA was able to locate that remotely resembled a "Reservation of Rights" letter is attached hereto as **Exhibit L**. As the Court can see,

---

[1] Exhibit I was provided to counsel for Travelers on August 18, 2014, in a further attempt to resolve the parties' discovery dispute. *See* August 18, 2014 e-mail chain between Buchheit, Seamands, and Chapnick, attached hereto as **Exhibit K.**

5

this letter merely expresses that Travelers' investigation is ongoing, and that Travelers reserves its rights under the insurance policy. It does not identify any particular coverage or exclusion provisions that are at issue, and gives no indication that Travelers either anticipates litigation or intends to deny coverage.

In the parties' August 15, 2014 Rule 37-1 call with the Court, counsel for Travelers – citing *Compton v. Allstate Property & Casualty Insurance Company*, 278 F.R.D. 193 (S.D. Ind. 2011) – asserted that the date upon which an insurer issues a reservation of rights letter has been held to be an appropriate measure of the date upon which the insurer began anticipating litigation. However, *Compton* does not state this at all. In fact, after a review of the documents at issue, the Court in *Compton* found that the only documents entitled to protection under the work product doctrine were those created after the insured filed suit. 278 F.R.D. at 196. Counsel for IAA has been unable to locate a case standing for the proposition advanced by Travelers. Indeed, recent case law from this district contradicts Travelers' argument and affirms that the presumptive anticipation of litigation date is the date when the insurer denies coverage. *See, e.g., Fed. Deposit Ins. Corp. v. Fid. & Deposit Co. of Maryland* case. 2013 WL 3989140, at *3 (S.D. Ind. Aug. 2, 2013) ("While F & D did reserve its rights, the letter gives no indication that F & D intended to deny coverage. Integra therefore could not have reasonably anticipated litigation.").

Travelers did not make its final decision on IAA's claim until July 10, 2013. *See* July 10, 2013 "Claim Decision," attached hereto as **Exhibit M**. As the case law makes clear, Travelers' assertion – that it anticipated litigation **over six (6) years** prior to issuing its final decision letter – is presumptively unreasonable. *See, e.g., Harper*, 138 F.R.D. at 663; *see also Fed. Deposit Ins. Corp.*, 2013 WL 3989140, at *3 ("[I]t is almost always when the coverage is denied that a party

6

reasonably anticipates litigation and thus can avail itself of work-product protection."); *Nicklasch v. JLG Indus., Inc.*, 193 F.R.D. 568, 570 (S.D. Ind. 1999).

Because Travelers has failed to establish facts sufficient to overcome the presumption that such documents were not created in reasonable anticipation of, and primarily in response to the threat of, impending litigation, IAA requests that the Court compel Travelers to produce those documents on the Second Amended Log, which Travelers has claimed are protected by the work product doctrine, that pre-date its July 10, 2013 denial of coverage.

**II.     Travelers Has Failed To Establish That Multiple Entries On Its Second Amended Log Are Entitled To Protection By The Attorney-Client Privilege.**

In a federal diversity action, such as this one, "where state law provides the substantive rule of decision, privileges are determined in accordance with the applicable state law." *Woodruff v. Am. Fam. Mut. Ins. Co.*, 291 F.R.D. 239, 241 (S.D. Ind. 2013). As such, Indiana state law governing the application of the attorney-client privilege will apply in this case. Under Indiana law, "not every communication between an attorney and a client is a 'confidential communication' and entitled to a reasonable expectation of confidentiality." *Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721, 725 (Ind. Ct. App. 1995). Instead, where an attorney performs non-attorney functions, the attorney's communications relating thereto are not protected by the privilege. *See Woodruff*, 291 F.R.D. at 246. This is especially true in the insurance context. Courts have recognized time and again that attorneys for insurers do not always act in the role of legal advisor, and when they are not acting as a legal advisor, those communications are not privileged. *See, e.g., id.* ("Where, as here, an attorney is performing the non-attorney role of claims adjuster, his communications are not privileged."); *Kleinrichert v. Am. Fam. Ins. Grp.*, 2011 WL 470614, at *3 (S.D. Ind. Feb. 3, 2011) ("The attorney-client privilege does not apply to

7

the extent an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor rather than as a legal advisor.").

### A. Entries containing discussions of "coverage issues" do not appear to be protected by the attorney-client privilege.

In multiple instances on its Second Amended Log, Travelers refuses to produce documents where "coverage issues" are discussed, claiming that such documents are protected by the attorney-client privilege. *See* Ex. J at 1.

As Travelers is an insurance company, one would expect that a majority of the communications its employees have deal with "coverage issues." *See Harper*, 138 F.R.D. at 662 (factual inquiries into, or evaluation of, claim, which are undertaken to arrive at a claim decision, are within the insurer's ordinary course of business); *see also Nicklasch*, 193 F.R.D. at 570 ("An investigation that is undertaken to determine whether there is coverage, whether the claim should be paid, and whether a subrogation claim could be pursued, is not undertaken in anticipation of litigation."). However, despite IAA's multiple requests to provide more detail as to the "coverage issues" discussed, so that IAA could evaluate whether the attorney listed on the communication was acting as a legal advisor, rather than a claims adjuster/supervisor/monitor, Travelers has refused to do so. *See, e.g.,* Exs. E, F, and G.

Travelers has refused to provide an adequate explanation of precisely how the challenged entries on the Second Amended Log fall within the scope of the attorney-client privilege, and as such, cannot sustain its burden to show that the withheld documents should be protected from disclosure. Therefore, IAA requests that the Court compel Travelers to produce the documents identified in these sections of the Second Amended Log. Alternatively, IAA requests that the Court order Travelers to provide more detail as to the "coverage issues" discussed so that the Court and IAA can meaningfully evaluate the propriety of the claimed privilege.

8

      **B.    Entries where the attorney involved was performing non-legal functions are not protected by the attorney-client privilege.**

Similarly, Travelers asserted the attorney-client privilege to justify its refusal to produce various other categories of documents which, by their very description on Travelers' privilege log, appear to involve an attorney performing non-legal functions. For instance, Travelers asserted the privilege as to documents regarding change order language (*see* Ex. H, at 37 (TRV FISHER CLM 022344, 022349), at 39 (TRV FISHER CLM 022457, 022459), at 42 (TRV FISHER CLM 023372, 024161)); IAA's proof of loss and claim submission (*id.* at 12 (TRV FISHER CLM 011609), at 55-56 (TRV FISHER CLM 027203, 027204-27206), at 70 (TRV CLM 00364), at 87 (TRV CLM 01984-1993)); and various substantial completion dates associated with the Project (*id.* at 69 (TRV CLM 00335-336), at 96 (TRV CLM 02339)). For a listing of all objectionable entries, *see* Ex. J at 3. However, as explained above, the mere fact that these documents may have involved communications to or from an attorney is not sufficient, standing alone, to bring them within the protection of the attorney-client privilege, especially in light of the fact that attorneys for insurance companies may perform a variety of non-legal functions in the course of their employment. *See Woodruff*, 291 F.R.D. at 246.

Travelers has failed to show how discussions regarding change orders, IAA's proof of loss and claim submission, and substantial completion dates for the Project, among other things – all of which would be encountered in the course of adjusting IAA's claim – are somehow protected by the attorney-client privilege. IAA requests that the Court order Travelers to produce these documents. Alternatively, IAA requests that the Court order Travelers to supplement the Second Amended Log to include adequate descriptions to demonstrate how the attorneys at issue were acting in the role of legal advisor.

**III. Information Related To Travelers' Subrogation Investigation Is Not Privileged And Must Be Produced.**

Travelers has withheld various documents related to the subrogation investigation it undertook in connection with IAA's insurance claim, asserting various claims of privilege and irrelevance. *See* Ex. J at 3 ("Subrogation Documents Withheld"); *see generally* Ex. H. However, subrogation matters are not privileged simply because an attorney discusses them, nor is a standard subrogation investigation undertaken in anticipation of litigation. *See Compton*, 278 F.R.D. at 198 (determining that entries pertaining to "a typical and ordinary evaluation of whether the insurer has any subrogation interest to pursue," in contrast with entries made primarily because of the prospect of subrogation litigation, were not privileged); *Nicklasch*, 193 F.R.D. at 570 ("An investigation that is undertaken to determine whether . . . a subrogation claim could be pursued, is not undertaken in anticipation of litigation."). Furthermore, the fact that information regarding the subrogation investigation appears within Travelers' claim file belies Travelers' claim that the information is irrelevant. *See, e.g., Compton*, 278 N.E.2d 198-199 (finding that "the presence of the information within the main claims record itself is sufficient to make the information at least marginally relevant" and ordering the insurer to produce the requested information).

Travelers' subrogation investigation was a standard investigation, made in the ordinary course of Travelers' business. Travelers has never identified any litigation against potential subrogees that arose out of its subrogation investigation, nor is IAA aware of any such litigation, thus negating any claim that the investigation at issue in this particular case was undertaken in anticipation of litigation. Not only are the withheld subrogation documents not privileged, but they are relevant and could lead to the discovery of admissible evidence. These documents relate to the Project, and potentially relate to the scope and cause of the Steel Incident. They involve

Travelers' investigation of the same contractors that submitted claims to IAA as a result of the Steel Incident, which were later submitted to Travelers for payment.  Finally, these documents were contained in Travelers' claims file and were presumably considered by adjusters in making coverage decisions pertaining to IAA's claim.  They are relevant to this case (or at the very least, likely to lead to the discovery of admissible evidence), and thus Travelers should be required to produce them.

## IV.     Travelers Should Not Be Permitted To Redact The Amount Of Reserves.

In its First Request for Production of Documents, IAA sought a copy of Travelers' claim file regarding IAA's insurance claim following the Steel Incident. *See* Ex. A at 5.  When producing its file, however, Travelers redacted all reference to the amount of reserves that were set.  *See generally* Ex. H; *see* Ex. J at 4.

This case is analogous to the situation addressed by the Court in *Cummins, Inc. v. Ace Am. Ins. Co.*, 2011 WL 130158, at *12 (S.D. Ind. Jan. 14, 2011).  There, although the Court did not require the insurers to "search for and produce every document that relates to the setting (or not setting) of loss reserves," the Court found that the insurer was not permitted to redact reserve amounts in documents it had already identified because "[d]iscussions about coverage in connection with loss reserves [were] not wholly irrelevant to the claims and defenses in [the] case, [and] are not necessarily privileged."  Likewise, here, Travelers has produced its claim file, but has redacted the amount of reserves set.  This redaction is especially unwarranted, when IAA – who was Travelers' insured – is seeking the amount of the reserve information set regarding **its own claim**.  *See, e.g., Auto-Owners Ins. Co. v. C & J Real Estate, Inc.*, 996 N.E.2d 803, 807-08 (Ind. Ct. App. 2013) (where party seeking reserve information was the insured, Indiana Court of

Appeals affirmed trial court's order compelling production of "documentation regarding the amount put in reserve for the payment of [the insured's] claim[.]").

The precise amount of the reserves that Travelers set is particularly relevant and important in this case. With the substantial difference in the parties' respective positions regarding the covered loss figures, the reserves are relevant to establish Travelers' understanding of the loss and resulting damages. Furthermore, Travelers has asserted that IAA failed to properly assert a claim for "soft costs" associated with the delays caused by the Steel Incident, that IAA's claim for soft costs has been waived, and that Travelers was prejudiced by the alleged delay in IAA's assertion of soft costs under the Policy. *See* Dkt. 40, Travelers' Answer to Second Amended Complaint and Affirmative or Special Defenses, Aff. Defenses ¶¶ 10, 11, 14. As such, IAA's request for production of Travelers' claim file – including the specific amount of reserves that Travelers set for IAA's claim – is reasonably calculated to lead to the discovery of admissible evidence. The amount of reserves that Travelers actually set could possibly be probative as to Travelers' assertion of prejudice associated with the purported delay in IAA's claim for soft costs under the Policy, particularly if Travelers set a reserve amount that reflects it was anticipating the potential soft costs at issue.

Accordingly, because the specific loss reserve information that IAA seeks is relevant to the claims and defenses at issue in this case, and because Travelers need only remove the redactions on those documents already produced, IAA requests that the Court order Travelers to remove the redactions of the loss reserve amounts from documents that Travelers has produced in this case.

**V.      In Camera Inspection**

At the close of the August 15, 2014 conference call with the Court, Magistrate Judge Baker requested that if a motion to compel was ultimately filed, IAA identify examples of documents from Travelers' privilege log that IAA believes would be appropriate for an in-camera review, to aid the Court in addressing this dispute. To that end, IAA identifies the following documents:

- To aid the Court in its review of the documents Travelers has designated "work product": TRV FISHER CLM 011710; TRV FISHER CLM 011721-11722; TRV FISHER CLM 011740; TRV FISHER CLM 011744; TRV FISHER CLM 021769-21775;

- To aid the Court in its review of the documents Travelers has claimed are protected by the attorney-client privilege: TRV FISHER CLM 023372; TRV FISHER CLM 027203; TRV FISHER CLM 022655-22658; TRV FISHER CLM 022686-22753; TRV CLM 00335-336;

- To aid the Court in its review of the subrogation documents Travelers has refused to produce: TRV FISHER CLM 010654; TRV FISHER CLM 011674; TRV FISHER CLM 011766-11769; TRV CLM 000367-368; TRV CLM 000436; and

- To the extent the Court wishes to review the actual reserve amounts, in connection with IAA's request that they be unredacted: TRV FISHER CLM 010644; TRV FISHER CLM 011036; TRV FISHER CLM 025989; TRV CLM 000326; TRV CLM 002425.

## **CONCLUSION**

Travelers bears the burden of establishing that it is justified in refusing to produce materials over which it has asserted a privilege or other objection. Because Travelers cannot meet that burden, for all of the foregoing reasons, IAA respectfully requests that the Court grant the instant Motion to Compel.

Dated: September 12, 2014

                                                Respectfully submitted,

                                                ICE MILLER LLP

                                                /s/ Jenny R. Buchheit_____
Rebecca J. Seamands, Atty. No. 16505-49
Jenny R. Buchheit, Atty. No. 26653-49A
Nathaniel M. Uhl, Atty. No. 25139-49
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Telephone:  (317) 236-2100
Facsimile:   (317) 236-2219
Rebecca.Seamands@icemiller.com
Jenny.Buchheit@icemiller.com
Nathaniel.Uhl@icemiller.com

*Attorneys for Plaintiff, Indianapolis Airport Authority*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing was served upon the following counsel of record via the Court's Electronic Notification system this 12th day of September 2014:

| | |
|---|---|
| Rick L. Hammond | Michele A. Chapnick |
| Samuel R. Stalker | Gregory and Meyer, P.C. |
| Amanda Buishas | 340 E. Big Beaver Rd., Suite 520 |
| Johnson and Bell, Ltd. | Troy, MI 48083 |
| 33 West Monroe Street, Suite 2700 | mchapnick@gregorylaw.com |
| Chicago, IL 60603 | |
| Hammondr@jbltd.com | |
| Stalkers@jbltd.com | |
| Buishasa@jbltd.com | |

                                              /s/ Jenny R. Buchheit_____
                                              Jenny R. Buchheit

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100