**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| INDIANAPOLIS AIRPORT AUTHORITY,　) | |
| ) | |
| Plaintiff,　) | |
| ) | |
| v.　) | Case No. 1:13-cv-01316-JMS-TAB |
| ) | |
| TRAVELERS PROPERTY CASUALTY　) | **DEMAND FOR JURY TRIAL** |
| COMPANY OF AMERICA,　) | |
| ) | |
| Defendant.　) | |

**IAA'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL**

Travelers' Response in Opposition to IAA's Motion to Compel is conclusory and misleading. IAA does not, as Travelers claims, seek the "wholesale production of [Travelers'] attorney-client and work-product communications." (Dkt. 71 at 1.) Nor does IAA argue that Travelers had no attorney-client or work product communications. *Id.* What IAA does seek, and what the case law supports, is production of Travelers' documents that are not protected from disclosure, because the documents at issue were not created in anticipation of litigation, were created in the ordinary course of Travelers' adjustment of IAA's claim, and/or the attorney involved was not acting in the role of legal advisor.

This entire discovery dispute centers around Travelers' refusal to acknowledge that there are different standards for the application of the attorney-client privilege and work product doctrine when it comes to insurance companies, whose business it is to investigate insurance claims and make coverage determinations. Given an insurance company's ordinary course of business, courts have restricted insurance companies, such as Travelers, from withholding certain documents created during the course of its everyday business activities. Travelers has ignored

the relevant and applicable case law cited by IAA, and instead, has argued that if its documents are not privileged, then IAA's documents are not privileged.  According to Travelers, because IAA engaged counsel to advise it during the adjustment of its insurance claim, IAA's counsel became insurance adjusters themselves, thereby negating IAA's claims of privilege.  Travelers' argument is supported neither by law nor by logic.  Moreover, IAA's document production is not before the Court on the instant motion.

Travelers has failed to establish that the challenged documents are protected from disclosure.  Accordingly, IAA respectfully requests that the Court grant its Motion to Compel (Dkt. 67.)

**I.      Travelers has not rebutted the presumption that the date it reasonably anticipated litigation with IAA was July 10, 2013 – the date it issued its Claim Decision.**

As explained in detail in IAA's Brief in Support of its Motion to Compel (Dkt. 68), in the insurance context, "anticipation of litigation is presumed unreasonable . . . before a final decision is reached on the claim," as "[i]t is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product."  *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991); *see also Fed. Deposit Ins. Corp. v. Fid. & Deposit Co. of Maryland*, 2013 WL 3989140, at *3 (S.D. Ind. Aug. 2, 2013) (documents created before coverage is denied "are considered to be in the ordinary course of business and not work-product") (internal citations omitted).

Travelers does not dispute that it did not issue a claims decision denying IAA's claim until July 10, 2013.  Thus, the rebuttable presumption is that Travelers did not anticipate litigation until that date. Travelers, however, persists in arguing that it anticipated litigation with

IAA a mere seven (7) days after the January 24, 2007 Steel Incident occurred – "when it involved coverage counsel," i.e., its in-house counsel Murray Sacks. (Dkt. 71 at 19.) But "merely retaining counsel" – if involving in-house counsel can truly be categorized as retaining counsel – "is not sufficient to show reasonable anticipation of litigation when the interests of the insurer and insured are aligned." *Fed. Deposit*, 2013 WL 3989140, at *3 (citing *Harper*, 138 F.R.D. at 660). And the "insurer and insured's interests are aligned **until and unless the insurer denies the claim**," *id.* (citing *Tayler v. Travelers Ins. Co.*, 183 F.R.D. 67, 70-71 (N.D.N.Y. 1998)) (emphasis added) – here, July 10, 2013.

Nor can Travelers rely on its "Reservation of Rights" letters to rebut the July 10, 2013 presumption. As discussed in IAA's Brief, there is no support for Travelers' assertion that the date upon which an insurer issues a reservation of rights letter has been held to be an appropriate measure of the date upon which the insurer began anticipating litigation. (Dkt. 68 at 6.) Indeed, each letter cited by Travelers specifically references that IAA's claim remains under investigation. (Dkt. 71-8 at 2, 9, 16, 19, and 24.) Moreover, in correspondence dated as late as July 20, 2012, Travelers informed IAA that it "will continue to gather the necessary information it needs in order to complete its investigation." (Dkt. 71-4 at 4.) Travelers cannot seriously argue that it was anticipating litigation with IAA during the entire time it was completing its investigation of IAA's claim. Such an argument begs the question of whether Travelers was adjusting IAA's claim in good faith, if Travelers now claims it was anticipating litigation from the very beginning.

Likewise, the alleged "tolling agreements" do nothing to rebut the presumption. *See, e.g., Minebea Co., Ltd. v. Papst*, 229 F.R.D. 1, at *4 (D.D.C 2005) ("[D]ocuments created during the pendency of a tolling agreement are generally not created 'in anticipation of litigation' and

3

must be produced.")  Travelers claims these are "prima facie evidence" that the parties were anticipating litigation as early as January 14, 2009.  (Dkt. 71 at 21.)  In reality, however, as set forth by the January 14, 2009 letter Travelers references, these "tolling agreements" were merely agreements to extend the contractual limitations period, so that IAA's rights would not be cut off due to Travelers' ongoing investigation and review of IAA's claim submission.  (*See* January 14, 2009 letter from Ms. Fisher (Travelers) to Mr. Goldstein (counsel for IAA), a copy of which is attached hereto as **Exhibit A**.)[1]  Moreover, in several instances, IAA did not ask for the original deadline to be tolled; Travelers voluntarily and without prompting initiated the extension of the limitations period.  *See e.g., id.*; *see also* Dkt. 71-4 at 86.  Travelers cannot now rely on this voluntarily action to cut off IAA's ability to discover documents generated while Travelers was investigating IAA's claim – especially documents generated prior to January 14, 2009.

Finally, although Travelers does not specifically argue this point, Travelers cannot rely on Ms. Seamands' August 17, 2012 letter in support of its claim that it was anticipating litigation with IAA as far back as January 31, 2007.  This letter, attached to Travelers' Response as Exhibit 6 (Dkt. 71-7), demonstrates that Travelers was still actively investigating IAA's claim over five and a half years after the Steel Incident occurred, and details the extensive work that both parties had put into the claims adjustment process.  After what amounted to an about-face by Travelers as to the adjustment of the claim, IAA outlined three courses of action: (1) meeting with Travelers to negotiate a resolution to the claim; (2) submitting the matter to a private judge or binding arbitration; or (3) filing suit.  (Dkt. 71-7 at 6.)  Although it is clear from this letter that litigation was IAA's last resort, and that IAA was open to resolution by other, non-litigious means, this letter could possibly have caused Travelers to anticipate litigation with IAA – an

---

[1] Although Travelers' refers to and relies upon the January 14, 2009 letter, it was not attached to Travelers' Response.  *See* Dkt. 71 at 21.  IAA has provided it here so that the Court can review the actual communication in context.

4

argument that Travelers has yet to advance. But by no means does this August 17, 2012 letter allow Travelers to protect documents from 2007, 2008, 2009, 2010, 2011, and earlier in 2012, as Travelers is currently attempting to do.

It is not the anticipation of a disagreement that triggers the work product doctrine – it is the anticipation of litigation. And there is absolutely no evidence that Travelers anticipated litigation with IAA a mere 7 days after the January 24, 2007 Steel Incident occurred. Because Travelers has not met its burden[2] to "demonstrate, by specific evidentiary proof [using] objective facts, that a reasonable anticipation of litigation existed when [each of the challenged] document[s] w[ere] produced, and that the document[s] w[ere] prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision," IAA respectfully requests that the Court compel Travelers to produce those documents on the Second Amended Log, which Travelers has claimed are protected by the work product doctrine, that pre-date its July 10, 2013 denial of coverage.

**II. Travelers has failed to provide sufficient detail to establish that multiple entries on its Second Amended Log are entitled to protection by the attorney-client privilege.**

Contrary to Travelers' claims, IAA does not dispute that the attorney-client privilege extends to in-house counsel, nor does IAA contend that all of Travelers' attorney-client communications, with either its in-house or outside counsel, must be produced.[3] Rather, IAA argues that Travelers' own documents and privilege log entries suggest that at times, Travelers'

---

[2] Because Travelers has not shown that the challenged documents were created in anticipation of litigation, IAA need not respond to Travelers' claims that IAA cannot show a substantial need for the materials. *See generally* Dkt. 71 at 21-22. IAA will note, however, that the fact that it has not noticed any depositions does nothing to support Travelers' arguments in this regard, as IAA does not wish to take depositions without the benefit of receiving all of Travelers' relevant and non-privileged documents.

[3] Indeed, with the exception of entries relating to Travelers' subrogation efforts, IAA has not sought to compel any communications between Travelers and its outside counsel, nor has it sought to compel the production of any documents generated after July 10, 2013.

in-house counsel was not acting in the role of legal advisor, and **those** documents must be produced. *See Kleinrichert v. Am. Fam. Ins. Grp.*, 2011 WL 470614, at *3 (S.D. Ind. Feb. 3, 2011) ("The attorney-client privilege does not apply to the extent an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor rather than as a legal advisor.").

Travelers' own documents demonstrate that its in-house counsel, Murray Sacks, played an active role in the adjustment of IAA's claim, which prompted IAA to question Travelers' extensive privilege designations regarding communications to/from Mr. Sacks, where "coverage issues" were discussed, as well as communications where it appeared from Travelers' descriptions that Mr. Sacks was not acting as a legal advisor. *See* IAA's Brief in Support of its Motion to Compel, Dkt. 68, at 8-9, for a detailed explanation of these categories of challenged communications. For example, Mr. Sacks participated in a review and analysis of a report prepared by Travelers' structural engineering consultants (Dkt. 71-4 at 79); was expected to participate in a meeting with Travelers' building and scheduling consultant and other claims adjusters to "review their calculations and then schedule a meeting with the insured" (*id.* at 85); participated in meetings with Travelers' building and scheduling consultant and other claims adjusters to review IAA's proof of loss and supporting documentation (*id.* at 99, 104), and to discuss reports on "theoretical calculations for delays" (*id.* at 127); participated in meetings with other Travelers' claim adjusters and underwriters regarding the status of construction, Travelers' investigation, and the possible extent of IAA's insurance claim (*id.* at 139-140); and participated in meetings with IAA, Hunt/Smoot (IAA's construction manager), and J.W. Flynn (IAA's insurance broker) to discuss coverage under the insurance policy (*id.* at 151).

Throughout its brief, Travelers claims that IAA has no support for its assertions that Travelers' in-house counsel was not acting as a legal advisor. As the above listing demonstrates, Travelers' claim is without merit. It is also ironic, as IAA has – on multiple occasions – requested that Travelers provide more detail as to its privilege log entries, so that IAA could further evaluate Travelers' claims of privilege. *See, e.g.,* Dkt. 68-5; 68-6; and 68-7. If IAA is lacking evidentiary support, it is because Travelers has refused to provide it. Travelers cannot refuse to provide information on one hand, and then on the other, argue that IAA's failure to provide that very information leads to the conclusion that it does not exist.

Finally, Travelers faults IAA for "cherry-pick[ing]" language from Travelers' Second Amended Log, accusing IAA of omitting language from the log which provides missing detail. (Dkt. 71 at 14-15.) This is demonstrably false. As illustrated by the chart below, in attempting to show that IAA has cherry-picked language to suit its purposes, Travelers embellishes its privilege log descriptions and includes additional detail and explanation, for the Court's benefit, that has never before been provided to IAA:

| **Description in Privilege Log** | **Description in Travelers' Response Brief** |
|---|---|
| File notes with redacted portions referencing communications with in-house counsel, Attorney Murray Sacks regarding legal opinions, advice and/or recommendations re: proof of loss (Dkt. 68-8 at 13 (TRV FISHER CLM 011609)) | The legal import of the insufficiency of IAA's Proofs of Loss or Partial Proofs of Loss, responses thereto and whether a request for a revised Proof of Loss or extension of time for Proof of Loss may have legal implications (i.e., waiver and estoppel) |
| Email from Nancy Fisher to in-house counsel, Attorney Murray Sacks regarding legal opinion, advice and/or recommendations regarding proposed change order language (Dkt. 68-8 at 38 (TRV FISHER CLM 022344; 022349)) | The legal implications of language contained in change orders |
| Email exchange involving in-house counsel Murray Sacks regarding legal opinion, advice and/or recommendation of change order language (Dkt. 68-8 at 43(TRV FISHER CLM 023372; | The legal implications of language contained in change orders |

7

| | |
|---|---|
| 024161)) | |
| Emails re: communications with in-house counsel, Attorney Murray Sacks regarding discussions as to legal opinions and strategy regarding proof of loss and other coverage issues (Dkt. 68-8 at 56-57 (TRV FISHER CLM 027203, 027204-27206)) | The legal import of the insufficiency of IAA's Proofs of Loss or Partial Proofs of Loss, responses thereto and whether a request for a revised Proof of Loss or extension of time for Proof of Loss may have legal implications (i.e., waiver and estoppel); legal opinions and strategy regarding coverage issues |
| Claim Notes with redacted portions referencing communication with counsel, Attorney Murray Sacks regarding legal opinions and analysis related to substantial completion dates (Dkt. 68-8 at 70 (TRV CLM 000335-336)) | Legal opinions and analysis related to substantial completion dates, which is the principal temporal trigger for the viability of any soft cost claim |
| Claim Notes with redacted portions referencing communications with counsel, Attorney Murray Sacks regarding legal opinion and analysis regarding submission of partial proof of loss by insured (Dkt. 68-8 at 71 (TRV CLM 000364)) | The legal import of the insufficiency of IAA's Proofs of Loss or Partial Proofs of Loss, responses thereto and whether a request for a revised Proof of Loss or extension of time for Proof of Loss may have legal implications (i.e., waiver and estoppel) |
| Emails re: communications with counsel, Attorney Chris Perry regarding legal recommendation and opinion regarding draft response acknowledging receipt of proof of loss (Dkt. 68-8 at 88 (TRV CLM 001984-1993)) | The legal import of the insufficiency of IAA's Proofs of Loss or Partial Proofs of Loss, responses thereto and whether a request for a revised Proof of Loss or extension of time for Proof of Loss may have legal implications (i.e., waiver and estoppel) |
| Claim Notes with redacted portions referencing communication with counsel, Attorney Murray Sacks regarding legal opinion, analysis and/or recommendation regarding coverage issues related to date of substantial completion (Dkt. 68-8 at 97 (TRV CLM 002339)) | Legal opinions and analysis related to substantial completion dates, which is the principal temporal trigger for the viability of any soft cost claim |

(*Compare* Dkt. 68-8 (Second Amended Log) *with* Dkt. 71 (Travelers' Response Brief) at 15.) Such alteration of the privilege log descriptions, especially in this context, when Travelers has accused IAA of "stripping out descriptive information from Travelers' privilege logs to suit IAA's arguments" – is misleading at best. (Dkt 71 at 17.) More importantly, these new descriptions do nothing to show that the communications at issue were not related to the adjustment of the claim.

8

"[A]n insurance company's blanket claim of privilege is insufficient without specific information regarding each document withheld on the basis of privilege." *Illiana Surgery and Med. Ctr. LLC v. Hartford Fire Ins. Co.*, 2010 WL 4852459, at *2 (N.D. Ind. Nov. 18, 2010). (citing *Hartford Fin. Servs. Group, Inc. v. Lake County Park and Rec. Bd.*, 717 N.E.2d 1232, 1237 (Ind. Ct. App. 1999)). An insurance company cannot, as Travelers has attempted to do here, simply "make a broad assertion that counsel was retained for legal advice." *Id*. If the insurance company does not prove that all of counsel's services were for the provision of legal advice, then the privilege will not attach. *See id.* at *3 (denying insurance company's motion to quash subpoena for deposition of outside counsel, where the insurance company "has not proven that all of [counsel]'s services have been providing legal advice," and "the evidence establishes that [counsel] performed many activities involved in the investigation of the insurance claim"); *see also Irving Materials, Inc. v. Zurich Am. Ins. Co.*, 2007 WL 4616917, at *4 (S.D. Ind. Dec. 28, 2007) (declining to extend attorney-client privilege where the insurer failed to establish that all of the attorney's services were for the purpose of rendering legal advice); *Stout v. Illinois Farmers Ins. Co.*, 852 F. Supp. 704, 707 (S.D. Ind. 1994) (rejecting insurance company's broad assertion of the attorney-client privilege).

Travelers has failed to put forth specific evidence that each of the challenged documents is protected by the attorney-client privilege. IAA therefore requests that the Court order Travelers to produce these documents. Alternatively, IAA requests that the Court order Travelers to supplement the Second Amended Log to include adequate descriptions to demonstrate how the attorneys at issue were acting in the role of legal advisor.

9

### III. Information related to Travelers' subrogation investigation is not privileged and must be produced.

Travelers continues to ignore the fact that, as an insurance company, certain activities, which are within the ordinary course of Travelers' business, do not qualify for protection under either the attorney-client privilege or the work product doctrine. Documents related to Travelers' subrogation investigation – which did not lead to litigation – fall in this category. *See Compton v. Allstate Prop. & Cas. Co.*, 278 F.R.D. 193, 198 (S.D. Ind. 2011) (determining that entries pertaining to "a typical and ordinary evaluation of whether the insurer has any subrogation interest to pursue," in contrast with entries made primarily because of the prospect of subrogation litigation, were not privileged); *Nicklasch v. JLG Indus., Inc.*, 193 F.R.D. 568, 570 (S.D. Ind. 1999) ("An investigation that is undertaken to determine whether . . . a subrogation claim could be pursued, is not undertaken in anticipation of litigation.").

Travelers' characterization of *Compton* is simply incorrect.[4] Travelers omits key language in its attempt to persuade the Court that IAA has misread this analogous case. The *Compton* court was considering Allstate's claims that entries "relating to potential subrogation claims and those regarding the adjustment of a claim by the mortgagee on the home" were privileged. *Compton*, 278 F.R.D. at 198. When addressing Allstate's argument that "information about adjustment of the mortgagee's claim is privileged," the Court "assume[d] Allstate is invoking the insured-insurer privilege recognized in *Richey v. Chappell*, 594 N.E.2d 443 (Ind. 1992)." *Id.* When addressing Allstate's arguments regarding its entries relating to potential subrogation claims, however, the Court found that

> The entries in the NextGen report regarding subrogation do not appear to have been made primarily because of the prospect of subrogation litigation, but appear

---

[4] Likewise, Travelers' reliance on *Cummins, Inc. v. Ace Am. Ins. Co.*, 2011 WL 1832813, at *4 (S.D. Ind. May 2, 2011), is distinguishable. Unlike here, in *Cummins*, there was no evidence that counsel was hired to and/or performed "typical claims adjustment functions." *Id.* at *3. In fact, there was affidavit evidence to the contrary. *Id.*

>to reflect a typical and ordinary evaluation of whether the insurer has any subrogation interest to pursue.

*Id.* The Court's finding that Allstate's subrogation entries are not privileged is consistent with its explanation of an insurance company's limited ability to protect documents on the basis of the attorney-client privilege and work product doctrine in a first-party insurance coverage dispute – such as this one. *See id.* at 196-197.

Finally, contrary to Travelers' claim, IAA has demonstrated the relevance of Travelers' withheld subrogation documents to this litigation. These documents relate to the Project, and potentially relate to the scope and cause of the Steel Incident. They involve Travelers' investigation of the same contractors that submitted claims to IAA as a result of the Steel Incident, which were later submitted to Travelers for payment. Finally, these documents were contained in Travelers' claims file and were presumably considered by adjusters in making coverage decisions pertaining to IAA's claim. *See, e.g., Compton*, 278 N.E.2d 198-199 (finding that "the presence of the information within the main claims record itself is sufficient to make the information at least marginally relevant" and ordering the insurer to produce the requested information); *see also* Dkt. 71-4 at 109, 127, 141, 142, 144, 162, 168, 172, 174, 177-179 (by way of example only), which demonstrate that subrogation information was included in the main claims record, and presumably visible to the other adjusters involved in the claim. They are relevant to this case (or at the very least, likely to lead to the discovery of admissible evidence), and thus Travelers should be required to produce them.

### IV. Travelers must un-redact the amount of its reserves.

Travelers argues – and IAA is well aware that – generally, the amount of reserves is not discoverable in cases where bad faith is not alleged. However, the question of whether reserves should be produced "should be decided on a case-by-case basis with reference to the particular issues present in the case." *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 644 (D. Kan. 2007) (internal citation omitted). IAA maintains that, similar to the situation encountered by the Court in *Cummins, Inc. v. Ace Am. Ins. Co.*, 2011 WL 130158, at *12 (S.D. Ind. Jan. 14, 2011), this case is an exception to the "general" rule.[5]

In *Cummins*, although the Court did not require the insurers to "search for and produce every document that relates to the setting (or not setting) of loss reserves," the Court found that the insurer was not permitted to redact reserve amounts in documents it had already identified because "[d]iscussions about coverage in connection with loss reserves [were] not wholly irrelevant to the claims and defenses in [the] case, [and] are not necessarily privileged." *Id.* Similarly, here, Travelers has produced its claim file, but has redacted the amount of reserves set. IAA is not asking this Court to order Travelers to go back, search for, and produce all documents regarding the loss reserves set in this case – far from it. Instead, IAA is simply asking the Court to order Travelers to remove the redactions from those documents that have already been produced. In this first-party insurance coverage dispute, IAA – as the insured – is entitled to discover the amount of reserves set regarding its own insurance claim. *See, e.g., Auto-Owners Ins. Co. v. C & J Real Estate, Inc.*, 996 N.E.2d 803, 807-08 (Ind. Ct. App. 2013) (where party seeking reserve information was the insured, Indiana Court of Appeals affirmed trial court's

---

[5] No case cited by Travelers stands for the proposition that reserve information is discoverable only in bad faith cases.

order compelling production of "documentation regarding the amount put in reserve for the payment of [the insured's] claim[.]").

Travelers either misunderstands or ignores the relevancy of its reserve information, particularly in the context of Travelers' affirmative defenses that IAA failed to properly assert a claim for "soft costs" associated with the delays caused by the Steel Incident, that IAA's claim for soft costs has been waived, and that Travelers was prejudiced by the alleged delay in IAA's assertion of soft costs under the Policy.  *See* Dkt. 40, Travelers' Answer to Second Amended Complaint and Affirmative or Special Defenses, Aff. Defenses ¶¶ 10, 11, 14.  In fact, one of the cases quoted by Travelers in its brief explains that "[t]he calculation of insurance reserves is an accounting technique by which insurance companies estimate the maximum potential liability on a claim."  *Barr Co. v. Safeco Ins. Co. of Am.*, 1988 WL 64558, at *6 (N.D. Ill. June 15, 1988).  While recognizing that reserves are estimates, IAA maintains that the amount of reserves that Travelers actually set could possibly be probative as to Travelers' assertion of prejudice associated with the purported delay in IAA's claim for soft costs under the Policy, particularly if Travelers set a reserve amount that reflects it was anticipating the potential soft costs at issue.  As Travelers has repeatedly stated, IAA's soft cost claim is significant – to the tune of $7.2 million – and it may be apparent whether or not it was contemplated by Travelers in assessing its "maximum potential liability" on IAA's insurance claim.

Because the specific loss reserve information that IAA seeks is relevant to the claims and defenses at issue in this case, and because Travelers need only remove the redactions on those documents already produced, IAA requests that the Court order Travelers to remove the redactions of the loss reserve amounts from documents that Travelers has produced in this case.

**V.     IAA is not an insurance company, and its counsel did not act as "super adjusters."**

Travelers refuses to acknowledge that courts hold insurance companies to different standards when applying the attorney-client privilege and work product doctrine, especially in the context of a first-party insurance coverage dispute. Rather than accept this reality, however, which is set forth extensively in case law from both this district and the state of Indiana, Travelers has resorted to name-calling. Such tactics are both unhelpful to the Court and inappropriate.

Additionally, rather than filing its own motion to compel and making document-by-document arguments as to IAA's privilege determinations, Travelers maintains that because IAA retained counsel to assist with the analysis, preparation of, and negotiation of its insurance claim, IAA's counsel became a "claims agent" or a "super adjuster[]," thereby subjecting IAA to the same attorney-client and work product standards that Travelers, as an insurance company, is subjected. *See, e.g.,* Dkt. 71 at 2 n.1, 15, 16-18. Unsurprisingly, Travelers cites no case law in support of this novel argument. IAA's privilege designations have no bearing on whether Travelers' privilege designations – which are the subject of the instant motion – are permissible.

As set forth in its Second Amended Complaint (as well as all prior Complaints in this case), IAA is a "municipal corporation and governmental body," who owns the New Midfield Terminal Project at the Indianapolis International Airport located in Marion County, Indiana. (*See* Dkt. 27-1 at ¶¶ 1, 5, 15.) It is not an insurance company. It does not conduct investigations into whether there is insurance coverage, whether an insurance claim should be paid, and/or whether a subrogation claim can be pursued, as part of its ordinary course of business. It is in the business of operating an Airport, and Travelers' suggestions otherwise are both illogical and without merit.

**VI.    In-camera inspection**

IAA does not, as Travelers argues "suggest that this Court should determine whether to disclose numerous [ ] documents or entries containing privileged communications by merely reviewing a sample of documents IAA has selected." (Dkt. 71 at 29.)  Contrary to Travelers' accusations, there was nothing sinister in IAA's identifying a sampling of documents for in-camera review. Rather, IAA identified – pursuant to Magistrate Judge Baker's suggestion – examples of documents that would be appropriate for an in-camera review to hopefully assist the Court in resolving this dispute.  Nothing more.

## CONCLUSION

Travelers failed to meet its burden to establish that it is justified in refusing to produce materials, identified by IAA in its Motion to Compel (Dkt. 67), over which it has improperly asserted a privilege or other objection. For the foregoing reasons, as well as those reasons set forth in IAA's Brief in Support of its Motion to Compel (Dkt. 68), IAA respectfully requests that the Court grant its Motion to Compel.

Dated: October 9, 2014

                                          Respectfully submitted,

                                          ICE MILLER LLP

                                          /s/ Jenny R. Buchheit_____
Rebecca J. Seamands, Atty. No. 16505-49
Jenny R. Buchheit, Atty. No. 26653-49A
Nathaniel M. Uhl, Atty. No. 25139-49
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Telephone:  (317) 236-2100
Rebecca.Seamands@icemiller.com
Jenny.Buchheit@icemiller.com
Nathaniel.Uhl@icemiller.com

*Attorneys for Plaintiff, Indianapolis Airport Authority*

15

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served upon the following counsel of record via the Court's Electronic Notification system this 9th day of October 2014:

| | |
|---|---|
| Rick L. Hammond | Michele A. Chapnick |
| Samuel R. Stalker | Gregory and Meyer, P.C. |
| Amanda M. Buishas | 340 E. Big Beaver Rd., Suite 520 |
| Johnson and Bell, Ltd. | Troy, MI 48083 |
| 33 West Monroe Street, Suite 2700 | mchapnick@gregorylaw.com |
| Chicago, IL  60603 | |
| Hammondr@jbltd.com | |
| Stalkers@jbltd.com | |
| Buishasa@jbltd.com | |

                                               /s/ Jenny R. Buchheit_____
                                               Jenny R. Buchheit

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
(317) 236-2100