UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANAPOLIS AIRPORT AUTHORITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-01316-JMS-TAB |
| | ) | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL**

**I. Introduction**

This is a high-stakes lawsuit about insurance coverage. Plaintiff Indianapolis Airport Authority, the insured, is suing Defendant Travelers Property Casualty Company, the insurer, for coverage of its claim related to the collapse of temporary shoring towers used in constructing IAA's new midfield terminal project. The collapse damaged steel members, disrupted the original plan for completing the project, and resulted in additional claims by project consultants and contractors. Travelers denied significant portions of IAA's claim, and IAA subsequently filed this lawsuit for breach of contract and for a declaratory judgment of its coverage under the policy. IAA filed the motion to compel at issue here seeking voluminous documents from Traveler's second amended privilege log, asserting that the information is part of Travelers' ordinary course of business. Travelers objects, contending that such information is either privileged, in anticipation of litigation, or irrelevant. For the reasons set forth below, IAA's motion to compel is granted in part and denied in part [Filing No. 67].[1]

---

[1] The Court recognizes there is a lot at stake here for both parties. Overall, the parties have presented well-crafted briefs. Unfortunately, the briefs also contain unnecessary jabs. The

1

## II. Discussion

### A. *Attorney-client privilege*

Federal Rule of Civil Procedure 26 grants the Court broad discretion over discovery. When a party withholds responsive documents from discovery, it bears the burden of establishing that the withheld materials are not discoverable. Fed. R. Civ. P. 26(b)(5)(A). IAA asserts that Travelers inappropriately withheld certain entries in its privilege log. Among these entries are documents described as communications regarding "coverage issues." IAA contends that Travelers failed to provide an adequate explanation as to how documents concerning coverage issues are privileged.[2] According to IAA, these documents appear to be part of the insurer's ordinary course of business (*i.e.,* factual inquiries of a claim or evaluation of a claim, which are undertaken to arrive at a claim decision) and thus, are discoverable. Likewise, IAA asserts that Travelers' privilege log does not adequately explain whether Travelers' attorneys Murray Sacks and Chris Perry were acting in a professional capacity or as claims handlers in their communications with claims adjusters.

Indiana law governs the scope of the attorney-client privilege. Under the relevant statute, Indiana protects attorneys from testifying as to communications made to them in the course of their professional business. Ind. Code § 34-46-3-1. The party asserting this privilege has the burden to prove the applicability of the privilege as to each and every document. *Irving Materials, Inc. v. Zurich American Ins. Co.,* No. 1:03-cv-361-SEB-TAB, 2007 WL 4616927, at

---

parties accuse one another of "cherry picking language," providing conclusory, misleading, and deliberately vague arguments, and ignoring applicable case law. Such allegations are not persuasive and do not advance the parties' legal arguments.

[2] Travelers responds that IAA has equally vague descriptions in its own privilege log, and IAA should be required to clarify its own entries if the Court finds Travelers must do so. However, Travelers has filed no motion to compel against IAA for its privilege log, and this is not the correct manner in which to assert separate allegations for a motion to compel.

2

*3 (S.D. Ind. Dec. 28, 2007). The scope of the attorney-client privilege "should be strictly confined within the narrowest possible limits." *Medical Assur. Co., Inc. v. Weinberger*, 295 F.R.D. 176, 182 (N.D. Ind. 2013).

A review of Travelers' privilege log reveals countless numbers of entries where "legal opinions, advice and/or recommendations re-coverage issues," or some variation thereof, is the description provided. For example, Travelers withheld emails from June 2007 for attorney-client privilege and work product, describing it as an "e-mail exchange including communication with in-house counsel, Attorney Murray Sacks regarding analysis of coverage issues." [Filing No. 68-8, at ECF p. 3.] In another entry dated August 25, 2010, Travelers redacted portions of a quarterly loss report with "communications with counsel, Attorney Murray Sacks re: coverage issues." [Filing No. 68-8, at ECF p. 43.] It is unclear what topics the phrase "coverage issues" includes, and Travelers' explanations do not assist the Court in determining whether such topics relate to evaluating and adjusting the claim or whether they relate to privileged communications. *See Hartford Financial Services Group, Inc. v. Lake County Park and Recreation Board,* 717 N.E.2d 1232, 1236-37 (1999) (finding attorney-client privilege protects attorneys interpreting policy, investigating details, and determining insurer liability but does not protect attorneys giving business advice or acting as negotiators, agents, or claims adjusters in insurance lawsuits).

Nor do Travelers' privilege log descriptions shed light on whether Sacks and Perry evaluated IAA's claim, made factual inquiries of the claim, calculated the claim, or otherwise acted in a manner analogous to a claims handler.[3] *See, e.g., Irving Materials, Inc. v. Zurich*

---

[3] Travelers' claim notes refer to Sacks as staff counsel in some communications and as part of the claims legal department in other communications. This suggests that Sacks may have been performing different duties or working in different capacities throughout Travelers' investigation of IAA's claim. [*See, e.g.,* Filing No. 71-4, at ECF p. 12, 18, 79, 81, 100, 104, 151.]

3

*American Ins. Co.,* No. 1:03-cv-361-SEB-TAB, 2007 WL 4616917 (S.D. Ind. Dec. 28, 2007) (rejecting an insurance company's argument that its attorney acted only in a professional capacity when facts revealed that the attorney specifically handled the underlying claim); *see also Illiana Surgery and Medical Center LLC v. Hartford Fire Ins. Co.*, No. 2:07-cv-3, 2010 WL 4852459, at *2 (N.D. Ind. Nov. 18, 2010) ("[A]n insurance company's blanket claim of privilege is insufficient without specific information regarding each document withheld on the basis of privilege. Thus, information does not become privileged simply because it came from counsel and was declared as advice."). For instance, Travelers redacted claims handler Nancy Fisher's file notes from January 28, 2008, describing them as "referencing communications with in-house counsel, Attorney Murray Sacks regarding legal opinions, advice and/or recommendations re: proof of loss." [Filing No. 68-8, at ECF p. 13.] Similarly, Travelers withheld emails dated July 23, 2007, regarding "communications with in-house counsel, Attorney Murray Sacks regarding discussions as to legal opinions and strategy regarding proof of loss and other coverage issues." [Filing No. 68-9, at ECF p. 5.] Insurers consider proof of loss and other coverage issues when evaluating and adjusting an underlying claim. Merely declaring that such communications contained legal advice does not shield Travelers from production when the topics discussed are part of its ordinary course of business. Travelers must provide a specific explanation on how these particular topics are privileged, and it has failed to do so.

There is not enough information to determine whether Sacks and Perry were acting in their professional capacities and whether coverage issues are privileged. Within fourteen days of this order, Travelers shall supplement the entries in its second amended privilege log with more detailed descriptions of the privileged documents at issue to opposing counsel so that the parties

may attempt to seek agreement as to whether the material is privileged.[4] This includes the documents withheld on the basis of the attorney-client privilege where it does not appear that Sacks and Perry were acting as attorneys. [*See* [Filing No. 67, at ECF p. 4](#).] Moreover, the amended privilege log must better describe the coverage issues contained in documents that Travelers withheld under attorney-client privilege. [[Filing No. 67, at ECF p. 2-3](#).] With the benefit of the supplemented privilege log, the parties are to meet and confer in an effort to resolve these outstanding discovery requests. If issues remain after a good faith effort on the part of both parties, they may contact the Magistrate Judge to seek guidance and resolution of any remaining issues.

### B. Subrogation Investigation

IAA also argues that information related to Travelers' subrogation investigation should not be privileged because the documents are part of the ordinary course of Travelers' business. More important, the documents in IAA's main claim file discuss notes on the subrogation investigation and were likely considered by claims adjusters in making coverage decisions related to IAA's claim. [*See, e.g.,* [Filing No. 71-4, at ECF p. 109](#).] Travelers responds that the subrogation investigation was conducted in anticipation of litigation. According to Travelers, the subrogation investigation involved separate claims handlers, different counsel, and was considered and analyzed separately from IAA's claim, so it is also irrelevant.

IAA argues that communications on the subrogation investigation must be produced. Relying on *Compton v. Allstate Property & Cas. Ins. Co.,* 278 F.R.D. 193, 198 (S.D. Ind. 2011),

---

[4] Given the sheer number of entries, the Court will not list each document Travelers must supplement in this order. Travelers should review IAA's motion to compel [[Filing No. 67](#)] for the specific entries that must be supplemented. Entries including the coverage issue designation are listed on pages two and three. [[Filing No. 67, at ECF p. 2-3](#).] Entries concerning Sacks and Perry's professional capacities are listed on page four. [[Filing No. 67, at ECF p. 4](#).]

IAA argues that the subrogation investigation would have occurred regardless of the likelihood of litigation as it is part of Travelers' business to evaluate whether the insurer has any subrogation interest to pursue. Travelers argues that *Compton* does not apply because *Compton* relied on the insurer-insured privilege in determining that subrogation investigations were not privileged. Travelers is mistaken. In *Compton,* insurer Allstate redacted documents relating to potential subrogation claims and adjustment claims by the mortgagee as being irrelevant or otherwise privileged. *Compton* rejected Allstate's argument that claims by the mortgagee were protected under the insurer-insured privilege as the redacted documents did not fit the circumstances required to receive protection under the privilege. As for the subrogation reports, *Compton* found the reports were part of the ordinary insurance evaluation of a claim and not created in anticipation of litigation. Compton, 278 F.R.D. at 198. *Compton* analyzed the subrogation reports using the work product doctrine, not the insurer-insured privilege. Like *Compton,* Travelers' subrogation investigation appears to reflect the typical and ordinary evaluation of whether the insurer has any subrogation interest to pursue. Moreover, the mere fact that subrogation investigation notes are included in IAA's main claim file suggests that it was relevant to IAA's claim. Thus, Travelers must produce the documents regarding its subrogation investigation.[5]

---

[5] In a footnote, Travelers indicates that a number of documents identified as containing subrogation and reserve information on Travelers' privilege log actually contain only reserve information. Some of the attorney-client communications identified as including subrogation information contain no reference to subrogation. [Filing No. 71, at ECF p. 23.] Documents identified as containing subrogation information that only contain reserve information need not be produced. Documents containing both subrogation and reserve information must be produced with reserve information redacted. Attorney-client communications with no reference to subrogation need not be produced.

### C. Work product doctrine

IAA next asserts that documents and information withheld as work product—some of which were created January 31, 2007, a mere seven days after the incident occurred—were within the ordinary course of business and must be produced. Travelers disagrees, arguing that it anticipated litigation on January 31, 2007, the day it involved coverage counsel, which it memorialized in a February 6, 2007, reservation of rights letter to IAA.

The work-product doctrine protects "(1) documents and tangible things that are (2) prepared in anticipation of litigation or for trial (3) by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). When the primary motivating purpose behind the creation of a document or investigative report is to aid in possible litigation, the document is prepared in the anticipation of litigation under Rule 26(b). *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983). In the insurance context, determining the primary purpose behind creating a document can be especially difficult as the same document can serve both litigation and ordinary business purposes. *Cummins, Inc. v. Ace American Ins. Co.*, No. 1:09-cv-00738-JMS-DML, 2011 WL 1832813, at * 5 (S.D. Ind. May 2, 2011). There is no bright line rule for making this determination and must be analyzed on a case-by-case basis. In the case of first-party insurance coverage, there is a presumption that it is unreasonable to anticipate litigation before the insurer reaches a final claim decision. *Iliana Surgery and Medical Center LLC, v. Hartford Fire Ins. Co.*, No. 2:07-cv-3, 2008 WL 2622803, at *2 (N.D. Ind. June 30, 2008); *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991). Thus, any document prepared before an insurer makes a final decision on its insured's claim is presumed not to be work product. This is particularly true as the insured and insurer's interests are

presumed to be aligned up until a final claim decision. *F.D.I.C. v. Fidelity and Deposit Co. of Maryland*, No. 3:11-cv-19-RLY-WGH, 2013 WL 3989140, at *3 (S.D. Ind. Aug. 2, 2013).

Travelers contends that it triggered the work product doctrine when it involved coverage counsel in the claim. However, involving counsel in an investigation and claim decision is too remote to be protected under the work product doctrine. For one, IAA did not file a lawsuit against Travelers until 2013, six years after Travelers involved its counsel. Moreover, it appears that counsel's purpose was to interpret the policy, and investigate and evaluate the claim, not prepare for litigation. *See Telamon Corp. v. Charter Oak Fire Ins. Co.*, No. 1:13-cv-00382-RLY-DML, 2014 WL 202097, at *2 (S.D. Ind. Jan. 17, 2014) (finding that the work product doctrine did not apply because hiring counsel was not associated with any litigation; litigation occurred many months after counsel was hired; was not the primary motivating factor for hiring the attorney; and thus was too tenuous to support the proposition that litigation was likely). Coverage counsel's role in the claim does not support the notion that litigation was likely, and Travelers' work product from January 31, 2007, is not protected.

Travelers points to its February 9, 2007, reservation of rights letter to show that it anticipated litigation soon after the steel collapse incident occurred. Citing *Cummins Inc. v. Ace American Ins. Co.*, No. 1:09-cv-00738-JMS-DML, 2011 WL 1832813, at *6 (S.D. Ind. May 2, 2011), Travelers argues that this February 9, 2007, letter clearly reflects its initial and detailed decision regarding the coverage issues at the heart of the parties' dispute, and can be reasonably viewed as a change in the relationship between Travelers and IAA with respect to IAA's claim.

The Court disagrees. The February 9 letter is a mere two pages that indicates that the investigation is ongoing, that Travelers will continue to gather necessary information to complete its investigation, but that it reserves any and all rights and defenses under the policy. The letter

further informs IAA of its obligation under the "Duties in the Event of Loss or Damage" provision in the policy, which requires IAA to make every effort to meet the planned completion date for its midfield terminal project. [Filing No. 68-13.] The February 9 letter's content provides no indication of any impending litigation and cannot be reasonably viewed as a change in the relationship between the insured and insurer.

Travelers mailed subsequent letters to IAA—dated March 6, 2007; April 23, 2007; May 16, 2007; January 28, 2009; March 27, 2009—that discuss the ongoing investigation and request information from IAA to further resolve the claim, including direct expense reports, expert costs, and reports generating post loss. [Filing No. 71-8.] Even though the subsequent letters reserve rights, Travelers continued to work with IAA to gather information and documents concerning the investigation. Indeed, the letters reveal that Travelers and IAA were still working with each other to determine the extent of the claim at issue. Travelers even noted that the critical issue of cause of loss remained undetermined. [Filing No. 71-8, at ECF p. 10.] The letters appear to be part of the ordinary course of Travelers' business and are not protected under the work product doctrine.

However, the Court rejects IAA's assertion that the work product doctrine applies only after July 10, 2013, the date of the final claim decision. While the date that an insurer reaches a final decision on a claim is presumed the time when the parties anticipate litigation, this presumption may be rebutted by specific evidentiary proof of objective facts to the contrary. *Stout v. Illinois Farmers Ins. Co*. 150 F.R.D. 594, 605 (S.D. Ind. 1993). IAA's August 17, 2012, letter to Travelers provides objective facts to rebut this presumption.

In the letter, IAA accuses Travelers of not acting in good faith, being unreasonable, and not moving any closer to resolving its claim. IAA complains that it has "little confidence that

this matter is progressing appropriately toward resolution" because Travelers refused to participate in discussions on how to resolve the claim. [Filing No. 71-7, at ECF p. 5-6.] IAA threatens litigation as one of three options to bring the claim to a conclusion—the first option being negotiation; the second, private judge litigation or binding arbitration; and the third, litigation—and demands Travelers promptly provide a position as to how the parties should proceed. Without question, this letter sets forth proof that, prior to the July 2013 final claim decision, Travelers anticipated litigation. This letter indicates a significant change in the relationship between the insurer and the insured as the interests of the parties no longer align. Consequently, the work product doctrine applies from August 17, 2012 onward.

Travelers also asserts that IAA's request to toll the statute of limitations between January 14, 2009, and July 2013, shows that it anticipated litigation as early as 2009. This argument fails. Both Travelers and IAA sought to toll the statute of limitations throughout the investigation. [*See, e.g.,* Filing No. 71-4, at ECF p. 73; Filing No. 71-7, at ECF p. 86.] Moreover, both parties sought to extend the statute for filling as they continued to work together on handling claims. Thus, the mere presence of tolling the statute of limitations in this case cannot be reasonably viewed as anticipation of litigation.[6]

IAA's August 17, 2012, letter marks a drastic shift in the relationship between the insured and insurer such that the parties could reasonably anticipate litigation. Thus, all documents

---

[6] On January 14, 2011, ten days before the final extension for the time period to file suit was to expire, IAA Attorney Alan Goldstein indicated he would have no other option than to file suit if Travelers would not grant IAA another extension due to health issues, new general counsel, and a bond issue. [Filing No. 71-4, at ECF p. 32.] However, this threat of litigation did not change the date when the parties reasonably anticipated litigation as IAA and Travelers continued to work collaboratively with one another after January 14, 2011. [*See, e.g.,* Filing No. 71-4, at ECF p. 8, 24, 27, 28.]

marked as work product after August 17, 2012, are protected by privilege. All documents prior to August 17, 2012, that have been marked as work product must be produced.

   *D. Redacted loss reserves*

IAA's final argument concerns Travelers' redaction of reserve amounts in previously produced documents. IAA argues that the amount of reserves for its claim is relevant to establish Travelers' understanding of IAA's loss and damages—a fact IAA argues is important given the substantial difference in the parties' respective positions on the covered loss figures. IAA requests that the Court order Travelers remove redactions of the loss reserve amounts from the already produced documents.

The Court denies this request. Loss reserves are not relevant to the issues in this case. For one, reserve amounts are precautionary estimates unrelated to the merits of a claim. *Compton v. Allstate Property & Case. Ins. Co.*, 278 F.R.D. 193, 198 (S.D. Ind. 2011). Moreover, reserve information for a claim is ordinarily not discoverable. *G&S Metal Consultants, Inc. v. Continental Cas. Co.*, No. 3:09-cv-493-JD-PRC, 2014 WL 5431223 (N.D. Ind. Oct. 24, 2014); *Cummins, Inc. v. Ace American Ins. Co.*, No. 1:09-cv-00738-JMS-DML, 2011 WL 130158, at *11-12 (S.D. Ind. Jan. 14, 2011); *see In re AT&T Fiber Optic Cable Installation Litigation,* No. IP99-C-9313H/K, 2002 WL 1364157, at *2 (S.D. Ind. June 5, 2002) (noting that reserves are not discoverable though the information would be helpful to plaintiff in formulating a strategy for settlement negotiations). Similarly, IAA has not alleged any bad faith claims so as to warrant discovery on reserve amounts. *Woodruff v. American Family Mut. Ins. Co.*, 291 F.R.D. 239, 250 (S.D. Ind. 2013) ("Courts have found reserve information relevant in a bad faith case on the issue of whether there is a 'potential for liability.'"). As Travelers makes clear, "the only issue before this Court is whether coverage exists for the remaining amounts for

which IAA seeks coverage under Travelers' policy." [Filing No. 71, at ECF p. 27.] Reserve amounts have no relevance in the context of this litigation.

IAA asserts that its discovery of the loss reserve amounts is similar to the situation the Court encountered in *Cummins, Inc. v. Ace American Ins. Co*., No. 1:09-cv-00738-JMS-DML, 2011 WL 130158 (S.D. Ind. Jan. 14, 2011). While IAA is correct that *Cummins* ordered defendant to remove redactions of loss reserves information in documents that defendant already produced, plaintiff's bad faith claim served as the Court's basis for permitting such discovery. In fact, the Court indicated that loss reserve information is not synonymous with and may not be probative of an insurer's opinion on true coverage because reserves are set based on business risk and regulatory compliance. *Cummins*, 2011 WL 130158, at *12. As an estimate for regulatory compliance, the loss reserves are not an accurate assessment as to Travelers' maximum potential liability on the IAA insurance claim. Thus, the Court denies IAA's request that Travelers remove redactions of the loss reserves information contained in previously produced documents.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part IAA's motion to compel [Filing No. 67]. IAA's motion to compel is denied to the extent that IAA seeks to have Travelers remove reserve information redactions in previously produced discovery. IAA's motion to compel is granted as to the documents withheld regarding Travelers' subrogation investigation. IAA's motion to compel production of documents withheld as work product is granted to the extent that documents withheld prior to August 17, 2012, must be produced. Travelers need not produce documents withheld as work product after August 17, 2012. IAA's motion to compel production of documents regarding coverage issues is granted to the extent that Travelers must provide a detailed explanation to opposing counsel within fourteen days of this

order of the coverage issues contained in documents it withheld as privileged. As for IAA's motion to compel production of documents protected under the attorney-client privilege, Travelers must provide a detailed description to opposing counsel within fourteen days of this order of Sacks' and Perry's roles in privileged documents where Travelers' counsel do not appear to be acting as attorneys.

Once Travelers supplements its privilege log with descriptions for documents regarding coverage issues and documents protected under attorney-client privilege where attorneys appear to be acting outside their professional capacity, the parties shall confer in an effort to resolve these outstanding discovery requests. With detailed descriptions of the withheld documents, the parties should be able to resolve these two remaining production issues without the Court's involvement. If issues remain despite the parties' good faith efforts, they may contact the Magistrate Judge to seek guidance and resolution of any remaining issues.

Dated: 12/23/2014

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Michele A. Chapnick
GREGORY AND MEYER P.C.
mchapnick@gregorylaw.com

Jenny R. Buchheit
ICE MILLER LLP
jenny.buchheit@icemiller.com

Nathaniel M. Uhl
ICE MILLER LLP
nate.uhl@icemiller.com

Rebecca J. Seamands
ICE MILLER LLP
rebecca.seamands@icemiller.com

Stephen M. Brandenburg
JOHNSON & BELL
sbrandenburg@rchlawyers.com

Amanda M. Buishas
JOHNSON & BELL, LTD.
buishasa@jbltd.com

Rick L. Hammond
JOHNSON & BELL, LTD.
hammondr@jbltd.com

Samuel R. Stalker
JOHNSON & BELL, LTD.
stalkers@jbltd.com