IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANAPOLIS AIRPORT AUTHORITY,     )<br>                                                                )<br>            Plaintiff,                              )<br>                                                                )<br>      v.                                                    )          Case No. 1:13-cv-01316-JMS-TAB<br>                                                                )<br>TRAVELERS PROPERTY CASUALTY     )          **DEMAND FOR JURY TRIAL**<br>COMPANY OF AMERICA,                    )<br>                                                                )<br>            Defendant.                          ) | |

### IAA'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF TRAVELERS' CLAIMS HANDLING AND UNDERWRITING MATERIALS

Plaintiff Indianapolis Airport Authority ("IAA") has again been forced to seek relief from the Court based on Defendant Travelers Property Casualty Company of America's ("Travelers") failure to produce relevant, non-privileged documents that are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This dispute arises out of Travelers' refusal to produce its "Best Practices Manual" (which sets forth its claims handling procedures) and its underwriting guidelines. In both instances, Travelers has attempted to justify its refusal to produce the documents not on grounds of privilege, but instead, on its unilateral conclusion that the documents are "confidential/proprietary" and/or not relevant to this lawsuit.

Travelers' arguments are contradicted by both logic and the law. The documents that IAA seeks are relevant and/or reasonably calculated to lead to the discovery of admissible evidence relating to the current coverage dispute between the parties. As such, IAA respectfully requests that the Court compel Travelers to produce them without further delay.

**ARGUMENT**

As the party seeking to avoid discovery, it is Travelers' burden to show that it should not be compelled to comply with IAA's requests. *See, e.g., Becker v. Evansville*, 2014 WL 1706390, at *1 (S.D. Ind. Apr. 29, 2014) (citing Fed. R. Civ. P. 26(b)(5)(A), 26(c)(1)); *Cummins, Inc. v. Ace Am. Ins. Co.*, 2011 WL 1832813, at *2 (S.D. Ind. May 2, 2011); *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D. Ind. 1991) (citations omitted). Here, the documents that IAA seeks are, by Travelers' own admission, not protected by any privilege or subject to the work product doctrine. Instead, Travelers has asserted a variety of objections relating to the relevance, responsiveness, burden of production, and the alleged confidential or proprietary nature of the documents in order to justify its decision to withhold or expansively redact them. Travelers has not and cannot establish that the requested documents should not be disclosed – indeed, as set forth below, the documents that IAA seeks are plainly relevant to the parties' claims and defenses – and thus, the Court should order Travelers to produce them.

**I.     Travelers' "Best Practices Manual" is discoverable and must be produced.**

   **A.     Factual Background**

In December 2013, IAA served its first Requests for Production of Documents on Travelers. (Dkt. 68-1.) Request No. 4 sought all "training manuals, handling procedures, guidelines, industry guidelines or standards" that Travelers uses to make its coverage determinations. (*Id.* at 5.) Travelers initially objected to producing such materials, but after multiple letters and a Rule 37-1 meet and confer telephone conference on July 23, 2014, it ultimately advised that it possessed no materials responsive to this Request. (*See* August 5, 2014 letter from Chapnick to Seamands and Buchheit, attached hereto as **Exhibit A**, at 2.)

IAA subsequently became aware of another case pending against Travelers that involved claims made by an insured under the same Commercial Inland Marine Insurance Policy that is at issue in this case. *See One Place Condominium LLC v. The South Loop Shops LLC, Southblock Dev. LLC, C & K P'ship, and Southblock Mgmt., Inc. v. Travelers Prop. Cas. Co. of Am.*, Cause No. 1:11-cv-02520, currently pending in the Northern District of Illinois. In the *One Place* case, however, Travelers produced a document that it referred to as its "Best Practices Manual." (*See* August 12, 2014 letter from Buchheit to Chapnick, Hammond and Stalker, attached hereto as **Exhibit B**, at 2.)

In response to IAA's inquiry regarding why this document was not produced in response to IAA's First Requests for Production, Travelers claimed that the Best Practices Manual was not responsive to IAA's Requests. (*See* August 15, 2014 letter from Chapnick to Seamands and Buchheit, attached hereto as **Exhibit C**, at 1-2.) Though IAA disputed this assertion (especially in light of counsel for Travelers' characterization of the Best Practices Manual as containing "procedural aspects relating to claims handling," *see id.* at 2), IAA served its Third Requests for Production on Travelers to specifically seek production of the Best Practices Manual. (*See* IAA's Third Request for Production of Documents to Travelers, attached hereto as **Exhibit D**, Request No. 1.) Yet again, however, Travelers refused to produce the document, citing a litany of objections.[1] Specifically, Travelers has claimed that it should not have to produce the Best Practices Manual because: (1) it is confidential and proprietary; (2) it constitutes extrinsic evidence that cannot be used to interpret the unambiguous terms of IAA's policy; (3) is overbroad, harassing, annoying, and unduly burdensome, and; (4) is not relevant to the issues in this dispute. (*See* Travelers' Responses to IAA's Third Requests for Production, attached hereto

---

[1] During a Rule 37-1 meet and confer telephone call on December 15, 2014, counsel for IAA (Rebecca Seamands and Nate Uhl) and for Travelers (Michele Chapnick) agreed that they were at an impasse on this issue.

3

as **Exhibit E**, at 3-4.) None of these objections have merit, and are especially insufficient to justify withholding production of the document.[2]

### B. The "Best Practices Manual" is relevant, responsive, and not privileged.

First, Travelers' contention that the Best Practices Manual is "confidential and proprietary," and therefore, need not be produced, is easily refuted by the Agreed Protective Order in this case. (Dkt. 48.) Travelers ignores the fact that the Agreed Protective Order specifically (a) protects Confidential Information,[3] (b) establishes procedures for its handling, and (3) agrees that confidentiality is not a basis for withholding Confidential Information from production. (*Id.* at 5-17.) Travelers has utilized the confidentiality designations provided for in the Agreed Protective Order in the past, and there is no reason why Travelers cannot similarly utilize this aspect of the Agreed Protective Order to protect the Best Practices Manual. Indeed, this Court has recently ruled that an insurance company's policies and procedures manual must be produced, as "[t]he federal rules do not limit discovery to public documents," and that protective orders can be utilized to protect such information. *Kleinrichert v. Am. Fam. Ins. Grp.*, 2011 WL 470614, at *4 (S.D. Ind. Feb. 3, 2011) (citing cases) (Baker, J.); *see also Cummins*, 2011 WL 130158, at *6 ("As to the Insurers' protestation that production of their claims and/or underwriting manuals could place them at a competitive disadvantage, the court finds that these concerns can be addressed through an appropriate protective order.").

---

[2] During the parties' January 20, 2015 telephone conference with Magistrate Judge Baker (Dkt. 103), IAA identified Travelers' refusal to produce its Best Practices Manual and Underwriting Manual as a discovery dispute that it was seeking the Magistrate's assistance in resolving. Magistrate Judge Baker ultimately advised the parties to file and brief motions to compel on their various discovery disputes. (*Id.*)

[3] "Confidential Information" is defined as "(i) information or Documents that a Party contends contains a trade secret or other confidential research, development, or commercial information as those terms are used in Fed. R. Civ. P. 26(c)(1)(G) and case law construing same; (ii) information or Documents that IAA is required to keep confidential due to preexisting obligations, including, but not limited to, contractual, statutory, or other legal obligations; or (iii) information or Documents required by statute or by the Federal Rules of Civil Procedure to be maintained in confidence." (Dkt. 48 at 2.)

Second, Travelers' contention that the Best Practices Manual is not relevant is not supported by the law. In *Cummins*, 2011 WL 130158, at *4-6, the Court considered the relevance of claims handling materials (including underwriting and claims manuals) in relation to an insured's claim for breach of contract and bad faith. The Court concluded that claims handling materials were relevant to a coverage dispute (and not just a bad faith claim) because they could clarify the intended meaning of policy language that the insured contended was ambiguous. *Id*. at *5-6. Specifically, the Court reasoned that claims or underwriting manuals in existence at the time the policy was underwritten and issued could reflect the insurance industry's own interpretation of the contractual language at issue, which could lead to the discovery of admissible evidence in relation to the coverage dispute. *Id*. As such, the Court compelled the insurer to produce the manuals. *Id*. at *6; *see also Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947-48 (Ind. 1996) (finding the insurance industry's interpretation to be relevant to resolving a dispute as to the meaning of policy provisions); *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1059-60 (Ind. 2001) ("[e]vidence of industry practice is admissible to construe terms of art [in insurance contracts] or ambiguous agreements").

Although Travelers contends that the policy at issue is unambiguous, it is clear that IAA disagrees with Travelers' assertion on this point. Indeed, IAA has outlined at least four policy provisions that are key to the resolution of this matter which must be interpreted by the Court on summary judgment. (*See* Dkt. 56.) Travelers is not allowed to unilaterally limit the scope of IAA's discovery requests based on its own self-serving characterization of the Policy as "unambiguous," especially where the Court has made no such conclusion as to the proper interpretation of the policy terms. *See Cummins*, 2011 WL 130158, at *5.

5

As to Travelers' assertion that the request for the Best Practices Manual is overbroad, annoying, harassing and unduly burdensome, it is difficult to comprehend how IAA's request for a single document, limited in both time and scope, could impose an undue burden on Travelers. Regardless, as the party resisting discovery, it is Travelers' burden to establish why it should not be required to comply with IAA's Requests. Travelers has never explained why production of this document would impose an undue burden on it.

Here, just as in *Cummins*, the Best Practices Manual – which admittedly sets forth Travelers' procedures for claims handling – is, at a minimum, "reasonably calculated to lead to the discovery of admissible evidence" with regard to the current coverage dispute between the parties. Fed. R. Civ. P. 26(b)(1). Therefore, Travelers is not justified in refusing to produce the Best Practices Manual, and the Court should order Travelers to produce that document (as well as any other documents responsive to IAA's First Request for Production No. 4 and Third Request for Production No. 1) without further delay.

## II. Travelers' "Underwriting Manual" is discoverable and must be produced.

### A. Factual Background

In its Third Requests for Production to Travelers, IAA also sought production of "all manuals, procedures, guidelines and/or related documents, including industry guidelines or standards adopted, accepted, used or consulted by Travelers, regarding the underwriting and/or issuance of Travelers' Commercial Inland Marine and/or Builder's Risk insurance policies, which were in effect during the time period of January 1, 2005 through December 31, 2009."[4] (*See* Ex. D at 4.) IAA also sought the same types of manuals or other guidelines "regarding the definition, interpretation, and/or implementation of the defined terms contained within Travelers' Commercial Inland Marine and/or Builders Risk insurance policies, which were in effect during

---

[4] This period reflects the time during which Travelers issued builder's risk insurance coverage to IAA.

the time period of January 1, 2005 through July 31, 2013." (*Id*. at 5.) In response to these Requests, Travelers again asserted a multitude of objections. (*See* Ex. E at 4.) Travelers did, however, produce nine heavily-redacted pages of its forty-one page underwriting guideline (the "Underwriting Manual"). Accompanying this production was a "Privilege/Objections Log," identifying, among other things, the headings/titles for those sections of the Underwriting Manual that had been redacted. (*See* Travelers' Privilege/Objections Log Relating to October 9, 2014 Production, attached hereto as **Exhibit F**) (the "Log").

In the parties' follow up Rule 37-1 correspondence and telephone calls,[5] Travelers indicated that it had produced only those sections of the Underwriting Manual that it believed were relevant to IAA's claim, and had redacted or otherwise withheld from production those portions it believed were not relevant. (*See* October 14, 2014 letter from Buchheit to Chapnick, Hammond, Stalker and Buishas, attached hereto as **Exhibit G**; October 17, 2014 letter from Chapnick to Buchheit, attached hereto as **Exhibit H**, at 2.) Travelers confirmed that none of the redactions to its Underwriting Manual were made on the basis that the information was privileged or protected by the work product doctrine. (*See* Ex. E, Ex. F, Ex. H.) However, despite the non-privileged nature of the Underwriting Manual, and the fact that it was directly responsive to IAA's Requests, Travelers refused to produce the Underwriting Manual in its complete and unredacted form.[6] Instead, Travelers argued that it was **IAA's** responsibility to identify those redacted portions of the Underwriting Manual reflected on the Log which IAA

---

[5] IAA and Travelers conducted Rule 37-1 meet and confer teleconferences on this issue (among others) on October 29, 2014 and December 15, 2014. As discussed in note 2, *supra*, IAA raised this issue in a teleconference with the Magistrate Judge on January 20, 2015.

[6] IAA maintains that Travelers must produce the entire Underwriting Manual, as it "must be read as a coherent whole." *See Wynkoop v. Town of Cedar Lake*, 970 N.E.2d 230, 236 (Ind. Ct. App. 2012) (rejecting plaintiff's insistence that a single phrase from manual promises termination only for just cause, when manual read as a whole clearly states that employment is at-will).

contended were relevant and should be produced. (*See* December 9, 2014 letter from Buchheit to Chapnick, Hammond, Stalker, and Buishas, attached hereto as **Exhibit I**.)

Though IAA disputed (and continues to dispute) Travelers' contention that IAA bears the responsibility of explaining to Travelers how redacted and/or withheld documents that IAA has not yet seen are relevant, IAA still attempted to do just that, identifying (by Bates number and by the descriptions provided by Travelers on the Log) which sections of the Underwriting Manual it believes are responsive to IAA's discovery requests and relevant to the claims and defenses at issue in this lawsuit. (*See id.* at 2-5.) Notwithstanding IAA's efforts, Travelers has refused to produce the remainder of its Underwriting Manual.

### B. The "Underwriting Manual" is relevant, responsive, and not privileged.

As discussed in detail above, Travelers' objections as to "Confidential/Proprietary Business Practice and Intellectual Property" do not support Travelers' redaction and/or withholding of the vast majority of its Underwriting Manual. As this Court has found, such confidentiality concerns may properly be addressed by a protective order. As Travelers designated those portions of its Underwriting Manual that **were** produced as "Confidential Pursuant to Protective Order," there is absolutely no reason why it cannot designate the remainder of the Underwriting Manual accordingly, and produce it in its entirety. (*See* October 9, 2014 letter from Chapnick to Seamands, attached hereto as **Exhibit J**.)

Moreover, IAA's request that Travelers produce the Underwriting Manual is more than reasonably calculated to lead to the discovery of admissible evidence. As IAA has previously and repeatedly explained to Travelers (and as set forth in exacting detail in IAA's December 9, 2014 letter to counsel for Travelers (Ex. I)), the redacted portions of the Underwriting Manual may contain information that is relevant to the parties' claims and defenses. By way of example

8

only, Travelers has redacted portions of the Underwriting Manual that ostensibly relate to, among other topics: reinsurance information, additional coverages that may be available to IAA, "core coverage items" available under the insurance policies, and "occupancy," all of which relate to IAA's claims against Travelers and assertions of coverage under the Policy. (*See* Ex. I at 2-5; *see generally* Ex. F.)

As set forth in Section I(B) above, the insurance industry's interpretation of policy provisions is relevant in a coverage dispute, and these interpretations are commonly "found in or referenced in claims or underwriting manuals." *See, e.g., Cummins,* 2011 WL 130158 at *6. Accordingly, because it is relevant, responsive, and not privileged or otherwise protected, the Court should also compel Travelers to produce its Underwriting Manual (as well as any other documents responsive to IAA's Third Request for Production Nos. 2, 3, 4, and 5) in a complete and unredacted form.

## CONCLUSION

Travelers bears the burden of establishing that it is justified in refusing to produce its claims handling and underwriting materials, including, but not limited to, its Best Practices Manual and its Underwriting Manual. For the foregoing reasons, Travelers cannot meet that burden. As such, IAA respectfully requests that the Court grant the instant Motion to Compel.

Dated: February 3, 2015

        Respectfully submitted,

        ICE MILLER LLP

        /s/ Jenny R. Buchheit
        Rebecca J. Seamands, Atty. No. 16505-49
        Jenny R. Buchheit, Atty. No. 26653-49A
        Nathaniel M. Uhl, Atty. No. 25139-49
        One American Square, Suite 2900
        Indianapolis, IN  46282-0200
        Telephone:  (317) 236-2100
        Facsimile:   (317) 236-2219
        Rebecca.Seamands@icemiller.com
        Jenny.Buchheit@icemiller.com
        Nathaniel.Uhl@icemiller.com

        *Attorneys for Plaintiff, Indianapolis Airport Authority*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon the following counsel of record via the Court's Electronic Notification system this 3rd day of February 2015:

| | |
|---|---|
| Rick L. Hammond | Michele A. Chapnick |
| Samuel R. Stalker | Gregory and Meyer, P.C. |
| Amanda Buishas | 340 E. Big Beaver Rd., Suite 520 |
| Johnson and Bell, Ltd. | Troy, MI 48083 |
| 33 West Monroe Street, Suite 2700 | mchapnick@gregorylaw.com |
| Chicago, IL  60603 | |
| Hammondr@jbltd.com | |
| Stalkers@jbltd.com | |
| Buishasa@jbltd.com | |

        /s/ Jenny R. Buchheit
        Jenny R. Buchheit

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
(317) 236-2100

I\4687207.2