UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANAPOLIS AIRPORT AUTHORITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:13-cv-01316-JMS-TAB |
| | ) |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION TO RECONSIDER**

This matter is before the Court on Defendant Travelers' motion to correct, clarify, or reconsider the April 7, 2015, order granting in part and denying in part Plaintiff IAA's motion to compel.¹  Travelers takes issue with the Court's order that Travelers produce its Best Practices Manual and portions of its underwriting guidelines.  For the reasons set forth below, Travelers' motion to reconsider [Filing No. 145] is granted in part and denied in part.

A motion to reconsider serves a limited function.  It is not a vehicle to again advance arguments already rejected by the Court or an occasion to tender new legal theories for the first time.  *In re August, 1993 Regular Grand Jury (Medical Corp. Subpoena I)*, 854 F.Supp. 1403, 1407 (S.D. Ind. 1994).  Rather, it may be used for instances where the Court has patently misunderstood a party; has made a decision outside the adversarial issues presented to the Court by the parties; or has made an error not of reasoning but of apprehension.  *Davis v. Carmel Clay*

---

¹ This motion initially sought to correct, clarify, and/or partially reconsider, or in the alternative, Rule 72 objections to the April 7, 2015, discovery order.  The Court denied Travelers' alternative motion for Rule 72 objections without prejudice.  [Filing No. 165.]

1

*Schools*, 286 F.R.D. 411, 412 (S.D. Ind. 2012) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). A motion to reconsider enables the Court "to correct its own error, sparing the parties and the appellate courts the burden of unnecessary appellate procedures." *Demos v. City of Indianapolis*, 139 F.Supp. 2d 1026, 1027 (S.D. Ind. 2011). With that in mind, the Court takes this opportunity to look at Travelers' new submissions and to alter its earlier decision.

Travelers' seeks to clarify whether it must produce reserves information discussed in its Best Practices Manual. This is due in large part to that fact that the Court previously found reserves information irrelevant. On December 23, 2014, the Court ordered Travelers' loss reserve information be excluded from discovery because IAA failed to assert a bad faith claim against Travelers and such information was not probative of Travelers' opinion on true coverage. [Filing No. 88, at ECF p. 11-12.] Since December 23, 2014, IAA has not amended its complaint to include a bad faith claim nor have the facts of this case otherwise changed such that the Court's reasoning on the issue of reserves would be in error. Thus, consistent with the December 23, 2014, order, any reserves information contained in the Best Practices Manual or underwriting guidelines are excluded from production.

Travelers also requests that the Court reconsider its decision that Travelers produce its Best Practices Manual in its entirety. Travelers asserts that its Best Practices Manual includes information that is not relevant to IAA's insurance policy or litigation. In support of its argument, Travelers submitted *in camera* its Best Practices Manual from 2007, 2010, and 2013 and also submitted a privilege log including descriptions for each subject it contests. The Court has reviewed the privilege log and *in camera* manuals. See *Crissen v. Gupta,* No. 2:12-cv-00355-JMS-WGH, 2014 WL 1414562, at *6 (S.D. Ind. Apr. 14, 2014) ("The Court finds it was

clearly erroneous for the Magistrate Judge not to review the documents at issue *in camera* to assist in analyzing the discovery-related motions."). These documents show that certain subjects are irrelevant to the case at hand, would not lead to discovery of admissible evidence, and thus, are excluded from production.[2]

However, Travelers' privilege log and manuals also include subjects that satisfy the broad discovery standard set forth under Rule 26 and must be produced. This includes subjects identified in Travelers' privilege log as: litigation, appeals,[3] subrogation, sensitive claims, underwriting contacts, certified policy requests, deductibles, claim file analysis, additional resources for notice of loss and assignment, and additional resources for coverage. As the Court reasoned in its April 7 order, relevancy is broadly construed for discovery purposes, and this information may be relevant or reasonably calculated to lead to the discovery of admissible

---

[2] This includes the following subjects contained in Travelers' privilege log: reserves; consumer complaints; fire cause and origin; fraud; personal property losses; structural; boat/yacht; equipment breakdown; additional living expense and fair rental value losses; insurance to value assessments; salvage; coinsurance; agribusiness; fidelity; flood/ National Flood Insurance; ocean marine; international property claims and claim notes; personal insurance; anatomy of a personal insurance policy; business insurance/anatomy of a business insurance policy; special account communications; sample coverage notes for boat & yacht, equipment breakdown, ocean marine; resources/assistance with questions about coverage; handling claims that do not require an inspection; handling claims that do require an inspection; preparing for the inspection; personal property/contents scope; notifying the Art Loss or National Equipment Registers; account re-evaluation notice; preparing building and/or contents damage estimates; statement of loss; resolution; full or partial denial; appraisal; policy reformation and ex-gratia payments; making a claim payment (ocean marine and equipment breakdown) payments to mortgage holders; closing and reopening the file; points of contact; multiple locations on business insurance policies; inland marine wedding protector plan; how will this claim affect the premium and policy status; guideline for handling damages to customer property; matching; direct payments to other payees; additional resources for investigation; additional resources for evaluation; additional resources for resolution; and an index of links. [Filing No. 155.]

[3] In its privilege log Travelers asserts that its Best Practices Manual's sections on litigation and appeals are work product. The Court disagrees. Travelers created these general provisions concerning litigation in the ordinary course of its business, not when litigation was justifiably anticipated. *Harper v. Auto Owners-Ins. Co.,* 138 F.R.D. 655, 660 (S.D. Ind. 1991). Thus, the work-product doctrine does not protect Travelers from producing this information.

evidence. *Davis v. Carmel Clay Schools,* 286 F.R.D. 411, 412 (S.D. Ind. 2012) (finding motions to reconsider appropriate for errors of apprehension, not of reasoning). Thus, Travelers shall produce Best Practices Manual provisions related to these ten subjects.

Travelers further requests the Court reconsider its decision regarding Travelers' underwriting guidelines. In the April 7 decision, the Court ordered Travelers to produce eighteen provisions that appeared relevant to the matter at issue. [Filing No. 138, at ECF p. 6.] The Court reasoned that it had no way of knowing whether these eighteen provisions contained relevant information because Travelers failed to provide relevant descriptions. Of those eighteen provisions, Travelers contests the production of the coinsurance, reporting, and pricing provisions because these three provisions are not relevant or reasonably calculated to lead to the discovery of admissible evidence. According to Travelers, the coinsurance provision discusses the application of the coinsurance clause and calculation of the coinsurance penalty. The reporting provision refers to a specific modifier that can be added to a Builder's Risk policy related to residential properties, apartments, offices, mercantile, condominium complexes, or other multiple building risks at multiple locations. [Filing No. 146, at ECF p. 11.] Travelers contends that IAA's policy does not include the reporting modifier and there is no coinsurance penalty at issue. A review of these two provisions *in camera* show that they are irrelevant to the matter at hand and are not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the reporting and coinsurance provisions are excluded from production.

Nevertheless, Travelers' pricing provision must be produced. The pricing provision discusses the determination of the policy premium by use of specified proprietary rate and various deductible credit factors. [Filing No. 146, at ECF p. 10.] Travelers argues that it includes confidential information that if revealed would place it at a competitive disadvantage

with its customers. As IAA points out, the parties signed an agreed protective order that would maintain Travelers' pricing provision as confidential and that would only permit IAA to use that information for prosecution, defense, mediation, settlement, trial, or appeal of this case. [Filing No. 161, at ECF p. 9.] Moreover, Travelers' concerns that producing its pricing provision will result in a competitive disadvantage is unfounded. An insurance company does not compete with its customers. Rather, it competes with other insurance agencies. IAA is a former customer, not a competitive agency. Thus, the agreed protective order will sufficiently protect Travelers' interest. Travelers must produce its underwriting pricing provision.

For the foregoing reasons, Travelers' motion to reconsider [Filing No. 145] is granted in part and denied in part. Of the contested provisions contained in its Best Practices Manual privilege log, Travelers shall produce provisions relating to litigation, appeals, subrogation, deductibles, claim file analysis, sensitive claims, underwriting contacts, certified policy requests, additional resources for notice of loss and assignment, and additional resources for coverage. Travelers shall also produce its pricing provision from its underwriting guidelines.

Date: 7/2/2015

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Michele A. Chapnick
GREGORY AND MEYER P.C.
mchapnick@gregorylaw.com

Jenny R. Buchheit
ICE MILLER LLP
jenny.buchheit@icemiller.com

Nathaniel M. Uhl
ICE MILLER LLP
nate.uhl@icemiller.com

Rebecca J. Seamands
ICE MILLER LLP
rebecca.seamands@icemiller.com

Amanda M. Buishas
JOHNSON & BELL, LTD.
buishasa@jbltd.com

Rick L. Hammond
JOHNSON & BELL, LTD.
hammondr@jbltd.com

Samuel R. Stalker
JOHNSON & BELL, LTD.
stalkers@jbltd.com