UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | | |
|---|---|---|---|
| INDIANAPOLIS AIRPORT AUTHORITY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | No. 1:13-cv-01316-JMS-TAB | |
| | ) | | |
| TRAVELERS PROPERTY CASUALTY | ) | | |
| COMPANY OF AMERICA, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**ORDER ON MOTIONS TO COMPEL**

**I. Introduction**

Pending before the Court are cross motions to compel.  In this complex insurance

litigation, the parties dispute discovery extending to at least seven different entities and involving

a countless number of emails, spreadsheets, and letters.  Defendant Travelers filed its motion to

compel against Plaintiff Indianapolis Airport Authority seeking documents IAA claims are

protected under attorney-client privilege and work product.  IAA filed a supplemental brief that

relates to a previous September 12, 2014, motion to compel against Travelers and seeks

documents designated as attorney-client communications and work product.[1]  For the reasons set

forth below, Travelers' motion to compel [Filing No. 159] is granted in part and denied in part,

and IAA's supplemental brief [Filing No. 130] relating to its September 12, 2014, motion to

compel is granted in part and denied in part.

---

[1] IAA filed this supplemental brief pursuant to the Court's instructions.  In a January 20, 2015, telephonic status conference concerning several discovery disputes (related to the Court's ruling on IAA's September 12, 2014, motion to compel) the Magistrate Judge instructed IAA to file and brief a motion to compel concerning any outstanding discovery issues the parties were unable to resolve after a good faith effort.  [Filing No. 103.]

1

## II. Discussion

### A.      Attorney-client privilege

Federal Rule of Civil Procedure 26 requires broad, open discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  Fed. R. Civ. P. 26(b)(1). However, parties may shield materials from discovery that are protected by attorney-client privilege, work-product privilege, or the common interest doctrine.  *F.D.I.C. v. Fidelity and Deposit Co. of Maryland*, No. 3:11-cv-19-RLY-WGH, 2013 WL 5938149, at *2 (S.D. Ind. Nov. 6, 2013).  Attorney-client privilege extends to communications made in confidence by a client and client's employees to an attorney acting in her legal capacity for the purpose of obtaining legal advice.  *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).  To shield materials under the attorney-client privilege, the Court must determine whether legal advice was sought from an attorney in her capacity as an attorney and whether any communications between the client and her attorney were germane to that purpose and made confidentially.  *Sandra T.E.,* 600 F.3d at 618.  The party invoking the privilege has the burden of establishing its propriety.

Privilege is typically asserted on a document-by-document basis.  *Long v. Anderson University*, 204 F.R.D. 129, 134 (S.D. Ind. 2001).  However, in discovery disputes implicating a large number of documents it is appropriate to review *in camera* a limited number of exemplary documents that the party invoking the privilege argues are representative of the documents withheld under a select category.  *See F.D.I.C. v. Fidelity and Deposit Co. of Maryland,* No. 3:11-cv-19-RLY-WGH, 2013 WL 2421770, at *1-2 (S.D. Ind. Nov. 6, 2013).  Based upon a review of these *in camera* documents, the Court may exempt the party invoking the privilege from producing the remaining documents from the select category.

1.  Travelers' attorney-client communications

IAA's supplemental brief contends that Travelers' privilege log improperly designates

several documents as protected under the attorney-client privilege.[2]  According to IAA, Travelers

improperly designated attorney-client communications as privileged that fall within the ordinary

course of Travelers' business.  For example, IAA asserts that privilege log entries where

Travelers' attorneys discussed the reporting structure of its consultants, tolling the statute of

limitations, and revising change order language shows that Travelers' attorneys acted within the

insured's ordinary course of business as supervisors and monitors of the claim investigation.

[Filing No. 130, at ECF p. 6-7, 9-11.]  However, Travelers' *in camera* submissions reveal that

documents containing communications about the reporting structure of its consultants also

sought a legal opinion on coverage issues.  [*In camera* Travelers' Ex. 15.]  Documents withheld

concerning time extensions, potential settlement, and proposed change order language are also

privileged.  *In camera* submissions show that claim adjusters Nancy Fisher and Elaine Bedard

sought advice from attorneys Murray Sacks and Chris Perry concerning whether to extend time

for IAA to file suit.  This is a valid communication seeking legal advice and thus, is privileged.

[*In camera* Travelers' Ex. 16.]  Other privilege log entries IAA argues should be produced

---

[2]  IAA suggests that communications between the insured and its counsel discussing a specific insurance policy are not protected by the attorney-client privilege.  No such limitation exists. The privilege extends to all communications between a client and its attorney for the purpose of obtaining legal advice or aid regarding the client's rights and liabilities that would not have been made absent the privilege.  *See Woodruff v. American Family Mut. Ins. Co.*, 291 F.R.D. 239, 246 (S.D. Ind. 2013); *Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721, 724 (Ind. Ct. App. 1995).  A contrary rule would have a chilling effect on an insurance company's decision to seek legal advice regarding specific coverage issues.  *See Hartford Fin. Servs. Group, Inc. v. Lake County Park and Recreation Bd.*, 717 N.E.2d 1232, 1235-36 (Ind. Ct. App. 1999) (noting that an insurance company's retention of legal counsel to interpret the policy, investigate the details surrounding the damage, and to determine whether the insurance company is bound for all or some of the damage is a classic example of a client seeking legal advice from an attorney).

concern settlement.  Such communications contain attorney mental impressions and thus are protected by attorney-client privilege.  [*In camera* Travelers' Ex. 17.]  Similarly, withheld communications concerning change order language includes legal advice on what impact, if any, the proposed language would have on coverage.  [*In camera* Travelers' Ex. 18.]  Thus, none of these documents needs to be produced.

IAA further asserts that Travelers' attorneys destroyed its privilege when it communicated with its consultants, Madsen, Kneppers & Associates and Wiss, Janney, Elstner Associates about IAA's claim.  Travelers' communications with MKA and WJE allegedly show that Travelers' attorneys acted as claim investigators and not in their legal capacity.  In the Court's view, communications with MKA and WJE do not destroy Travelers' attorney-client privilege.

Travelers' adjuster Fisher hired the consultants to assist in investigating IAA's claim.  While MKA and WJE are third parties, it is well settled that the attorney-client privilege is not waived when communications seeking legal advice are made by a client to its attorney in the presence of a third-party agent.  *United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir. 1997); *Snedeker v. Snedeker*, No. 2:10-cv-189-LJM-WGH, 2011 WL 3555650, at *2 (S.D. Ind. Aug. 11, 2011); *Ormond v. Anthem, Inc.,* Nos. 1:05-cv-1908-TWP-TAB, 1:09-cv-798-TWP-TAB, 2011 WL 2020661, at *2 (S.D. Ind. May 24, 2011).

Moreover, an investigation into relevant facts by Travelers' attorneys does not necessarily waive the attorney-client privilege.  As Travelers points out, legal advice cannot be rendered in a vacuum.  It is appropriate and within the attorney-client privilege for an attorney to review and investigate relevant documents to assist in rendering legal advice.  *Sandra TE v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2009) ("[F]actual investigations performed

4

by attorneys as attorneys fall comfortably within the protection of the attorney-client privilege."). Here, *in camera* communications show that Sacks and Perry met and reviewed MKA's and WJE's reports in their capacity as attorneys to advance negotiations with IAA's counsel. [*In camera* Travelers' Ex. 29.] Under these circumstances, their communications are protected.

According to IAA, Travelers' attorneys did not act in their legal capacity when they analyzed documents concerning IAA's proof of loss, date of substantial completion, claimed damages, or expense categorization. Consequently, IAA asserts that these communications must be produced. However, IAA's argument fails. Documents related to proof of loss, date of substantial completion, and damages are protected under attorney-client privilege. *In camera* communications show that Fisher sought legal advice on coverage of claims after proof of loss statements were completed, and Travelers' attorneys provided legal advice on Travelers' responsibilities under a partial proof of loss. [*In camera* Travelers' Ex. 23.] The same is true of Travelers' communications regarding the date of substantial completion. *In camera* documents show that Travelers' attorneys were not analyzing the relevant dates but giving their opinion on the completion dates IAA submitted. [*In camera* Travelers' Ex. 24.] Moreover, Sacks' and Perry's communications with Fisher and Bedard relating to damages are privileged. Travelers' *in camera* communications on damages provide legal advice on what costs, if any, would be covered under Travelers' policy, and how Indiana law may affect the outcome of the coverage. [*In camera* Travelers' Exs. 25, 26.] These communications fall within the attorney-client privilege and need not be produced.

However, Travelers' communication concerning expense categorization must be produced. This withheld email seeks assistance from Sacks and claims supervisor, Ken Chapman, on analyzing invoices submitted by IAA. Travelers' *in camera* communication does

not suggest that Sacks provided any legal advice. [*In camera* Travelers' Ex. 27.] Instead, the communication appears to be in the ordinary course of Travelers' business adjusting claims and thus, must be produced. *See Fares Pawn, LLC v. Indiana,* No. 3:11-cv-136-RLY-WGH, 2012 WL 3580068, at *5 (S.D. Ind. Aug. 17, 2012); *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 152 F.R.D. 132, 137 (N.D. Ill. 1993) ("But the legal advice given to the client must be the predominant element in the communication; the privilege will not apply where the legal advice is incidental to business advice.").

IAA seeks production of Travelers' drafted correspondence. However, Travelers' drafted communications to IAA are protected under attorney-client privilege. *In camera* documents show that Sacks and Perry did not write IAA communications themselves. Instead, Fisher and Bedard drafted the communications and consulted Sacks and Perry for legal advice on the language of the coverage letters. [*In camera* Travelers' Ex. 6.] Legal advice sought from an attorney concerning the legality of a drafted document that are made in confidence fall under the attorney-client privilege. *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009); *see Jones v. Hamilton County Sheriff's Dept.*, IP 02-0808-C-H/K, 2003 WL 21383332, at *5 (S.D. Ind. June 12, 2003).

IAA's supplemental brief further contests Travelers' privileged communications between Perry and his assistant concerning the name and location of certain files. *In camera* documents show Perry directed his assistant to save case law relevant to IAA's coverage issues under a specific file name. In another communication, Perry directed his assistant to find specific information relevant to IAA's coverage policy for him to consider.[3] [*In camera* Travelers' Ex.

---

[3] The majority of these privileged communications occurred after Travelers anticipated litigation with IAA and were saved for the purpose of analyzing and preparing Travelers' defense. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).

4.]  These communications show Perry investigated IAA's policy in his legal capacity and provided his opinion on relevant legal theories.  Such communications fall within the attorney-client privilege and need not be produced.  *See Sandra T.E.,* 600 F.3d at 620 ("The relevant question is not whether the attorney was retained to conduct an investigation, but rather, whether this investigation was related to the rendition of legal services.").

Lastly, IAA argues that Travelers' privilege logs are inadequate and subject to production.  IAA takes issue with Travelers' descriptions of communications "sent for purpose of requesting legal analysis and advice for the purpose of considering an aspect of the claim." [*See, e.g.,* Filing No. 131-11, at ECF p. 11.]  Travelers asserts that these communications concern legal advice and analysis of Indiana law as it relates to Travelers' rights and liabilities under its insurance policy.  However, Travelers' privilege log description does not reflect the privilege Travelers asserts in its brief.  Travelers must supplement its privilege log to more accurately reflect the content of these communications.

Contrary to IAA's position, Travelers' log entries describing "emails sent for purposes of providing documents requested by Attorney Chris Perry necessary for rendering legal opinion and advice" adequately reflect the communication and need not be supplemented.  [*See, e.g.,* Filing No. 131-14, at ECF p. 5.]  In the same vein, Travelers' log entries describing unidentified information produced to its attorneys for legal advice and emails sent with attachments seeking legal advice in upcoming, unspecified meetings are sufficient when considered in the context of preceding entries.  For example, IAA objects to a July 17, 2012, correspondence "from Attorney Seamands attached to privileged communications sent for purpose of seeking legal advice" because it is vague.  However, this entry was sent at the same time as the preceding entry, which reads "email sent for the purpose of requesting legal advice regarding correspondence and Proof

7

of Loss received from IAA / Attorney Seamands." [Filing No. 131-14, at ECF p. 3.]  After

considering the context of the attachment at issue, the Court finds supplementation and

production of these entries are not necessary.  Travelers provides enough of a factual basis to

properly establish its evidentiary privilege without giving away privileged information.  Fed. R.

Civ. P. 26(b)(5)(A); *Novelty, Inc. v. Mountain View Mktg., Inc.,* 265 F.R.D. 370, 380 (S.D. Ind.

2009).

Thus, the Court finds IAA's arguments concerning Travelers' attorney-client privilege

designation somewhat justified.  Travelers shall produce its documents related to expense

categorization [*in camera* Travelers' Ex. 27] and supplement its privilege log entries describing

communications "sent for purpose of requesting legal analysis and advice for the purpose of

considering an aspect of the claim" to more accurately reflect its communication.

2.  IAA's attorney-client communications

Travelers' motion to compel contends that IAA's privilege log improperly designates

several documents as protected under the attorney-client privilege that fall within the ordinary

course of IAA's business.[4]  For example, Travelers contends that IAA should be required to

produce communications where IAA's attorneys investigated IAA's insurance claim, gathered

documents, developed facts to support the claim, calculated damages, prepared spreadsheets,

proofs of loss and letters, presented IAA's claim, and communicated with Travelers.

Information gathered on behalf of attorneys to render legal advice, an attorney's impressions of

---

[4]  IAA argues that Travelers' motion to compel is untimely and should be denied because there
would be little to no opportunity to fully resolve the motion before the August 17, 2015,
discovery deadline, which would prejudice IAA.  [Filing No. 168, at ECF p. 5.]  The parties have
since then filed a joint motion to extend the Case Management Plan deadlines, which the Court
granted.  The discovery deadline is now October 16, 2015, which gives the parties ample
opportunity to comply with this order and otherwise resolve any lingering discovery issues.

those facts, and legal advice concerning drafted communications to Travelers fall within the scope of the attorney-client privilege. *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009); *see Jones v. Hamilton County Sheriff's Dept.*, IP 02-0808-C-H/K, 2003 WL 21383332, at *5 (S.D. Ind. June 12, 2003); *Long v. Anderson University,* 204 F.R.D. 129, 135 (S.D. Ind. 2001); *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc*., 152 F.R.D. 132, 136-37 (N.D. Ill. 1993).   It is not within IAA's ordinary course of business to submit an insurance claim, thus attorney communications aiding IAA in determining its rights under the insurance policy are protected. *Contra Illiana Surgery and Medical Center LLC v. Hartford Ins. Co.,* No. 2:07-cv-3, 2010 WL 4852459, at *2 (N.D. Ind. Nov. 18, 2010) ("Insurance companies, which are in the business of reviewing, processing, and adjusting claims, should not be permitted to insulate the factual findings of a claims investigation by the involvement of an attorney to perform such work."). The select *in camera* documents IAA filed with the Court show that IAA's counsel aided in determining IAA's rights under the insurance policy, and provided mental impressions on facts relevant to IAA's claim. [*In camera* Filing Nos. 173; 174; 175; 176; 177;178; 179; 180; 181; 182; 183; 184; 185.]  As such, these communications are privileged.

Gathering documents and disclosing facts into spreadsheets that support the claim would not be protected as a privileged communication, unless an attorney requested information to assist in rendering legal advice.  *See Upjohn Co. v. U.S.,* 449 U.S. 383, 394-96 (1981).  IAA argues that its attorneys did not gather documents and disclose facts relevant to IAA's insurance claim.  Instead, it relied on its employees and third-party agents to provide this information.  In support of its argument, IAA cites to the deposition of its finance director, Robert Thomson. Thomson testified that only the financial department had access to the information necessary to create IAA's damages spreadsheet, and his department was responsible for creating the related

spreadsheets.  [Filing No. 169-9, at ECF p. 1-5.]  *In camera* documents reveal Thomson and

IAA's financial department provided information to IAA's counsel at the direction of IAA's in-

house and outside counsel.  [*In camera* Filing Nos. 173, 176.]  The communication of these facts

formed the basis for IAA's attorney-client privilege and thus are protected.

However, IAA may not shield underlying facts from production.  In its motion, Travelers

lists documents that it argues contain underlying facts and must be produced.  [Filing No. 160, at

ECF p. 15.]  An *in camera review* of IAA's privileged documents show that some documents

IAA marked as privileged neither contain nor seek legal advice.  [*See, e.g., in camera* Filing No.

160-10 log entry 11; Filing No. 160-13 log entries 11, 45, 79, 89, 121, 122, 190; Filing No. 160-

14 log entries 5, 7, 8, 11, 21, 23, 294, 296.]  The attorney-client privilege does not protect these

underlying facts from being produced.  *E.E.O.C. v. SVT, LLC,* 297 F.R.D. 336, 345 (N.D. Ind.

2014).  Communicating underlying facts to an attorney "by copying the attorney on an email

does not transform the email into a privileged communication."  *Hamdan v. Indiana University*

*Health North, LLC*, No. 1:13-cv-00195-WTL-MJD, 2014 WL 2881551, at *3 (S.D. Ind. June 24,

2014).  Accordingly, these communications must be produced.  Other documents that Travelers

argues contain underlying facts do not.  An *in camera* review shows these communications relate

to legal advice on resolving IAA's contractor claims.  [*See, e.g., in camera* Filing No. 160-12 log

entries 94, 152; Filing No. 160-13 log entries 81, 85, 88; 91, 206.]  Such information is protected

by privilege.

Travelers argues that communications between IAA's counsel and representatives from

BSA Life Structures, TC&M, and Hunt Smoot must be produced because these communications

discuss business advice.  According to Travelers, IAA's counsel provided business advice on:

notices; change orders; contract amendments; spreadsheets; ongoing construction activities post-

incident; board presentations, updates, agendas, and memoranda; bonds; audits and accounting; scheduling; and project costs. *In camera* documents reveal that IAA's attorneys rendered legal advice on settling and resolving IAA's outstanding issues with its contractors post-incident. [*See, e.g., in camera* Filing No. 160-12 log entries 94, 152, 231, 232; Filing No. 160-13 log entry 88.] Board presentations, updates, agendas, and memoranda contained summaries of IAA's status on settling relevant claims with its contractors and are therefore protected. [*See, e.g., in camera* Filing No. 160-11 log entries 56, 57, 58, 61.] Likewise, IAA's attorneys provided legal advice on drafting change orders and gave legal opinions on outstanding settlement claims from contractors. [*See, e.g., in camera* Filing No. 160-13 log entries 61, 62; Filing No. 160-14 log entries 170, 172.] Moreover, IAA's counsel received requested information on the potential list of losses resulting from the steel tower incident and estimated settlement amounts. Such information served as the basis for IAA's legal advice and is thus protected. [*See, e.g., in camera* Filing No. 160-12 log entry 194; Filing No. 160-13 log entries 85, 273.]

Travelers further argues that IAA waived its privilege for attorney-client communications including third-parties Hunt Smoot and TC&M. IAA argues that Hunt Smoot's construction manager, Mark Flandermeyer, and TC&M's president, Rich Potosnak, were the functional equivalent of IAA employees and should be included under the attorney-client privilege. The Seventh Circuit has not directly addressed the functional equivalent test for which IAA advocates. *See LG Electronics U.S.A., Inc. v. Whirlpool Corp.* 661 F.Supp. 2d 958, 961 (N.D. Ill. 2009). Even so, IAA's third-party communications are protected. Flandermeyer and Potosnak were IAA's agents retained to assist in managing its large-scale Midfield Terminal Project. Because of their positions, they were routinely present at the project, maintained offices at the site, were issued IAA email accounts, utilized IAA servers, and solved day-to-day

problems at the site.  IAA asserts and *in camera* documents show that IAA's counsel relied on Flandermeyer's and Potosnak's knowledge of the project and worksite to analyze the insurance claim.  [*See, e.g., in camera* Filing No. 160-14, log entries 673, 951, 1019, 1042, 1108.]  IAA submits that Flandermeyer's and Potosnak's knowledge enabled in-house and outside counsel to provide legal advice.  As such, their communications with IAA's counsel related to giving or seeking legal advice are protected.  *See Ormond v. Anthem, Inc.*, 2011 WL 2020661, at *2 (S.D. Ind. May 24, 2011).

IAA also contends that Hunt Smoot's in-house counsel, Jose Pienknagura, and BSA Life Structures director of contractors, Jay McQueen, are protected under the privilege.  Pienknagura and McQueen rendered legal advice to IAA relating to the Midfield Terminal Project.  McQueen provided legal advice to IAA throughout the course of the project, whereas Pienknagura provided legal advice in 2007.  [Filing No. 168, at ECF p. 18.]  Travelers asserts that because IAA did not retain Pienknagura and McQueen as attorneys, their communications cannot be privileged.  However, no such requirement is necessary to establish the privilege.

The attorney-client relationship "begins when a client believes that he or she is consulting an attorney in a professional capacity and manifests his intention to seek professional legal advice."  *Olson v. Brown,* No. 4:09-cv-6-AS-PRC, 2009 WL 799531, at *2 (N.D. Ind. Mar. 23, 2009) (citing *Westinghouse Elec. Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311, 1317-19 (7th Cir. 1978)).  IAA consulted McQueen and Pienknagura in their professional legal capacity seeking legal advice.  [Filing No. 169-1, at ECF p. 4.]  *In camera* documents show that McQueen and Pienknagura gave IAA and IAA's agents legal advice on the insurance claim and other litigation relating to the steel tower incident.  [*In camera* Filing Nos. 190, 191, 192; *see, e.g., in camera* Filing No. 160-13 log entries 63, 74.]  Pienknagura did so until replaced by Ice Miller counsel.

[*See, e.g., in camera* Filing No. 160-11 log entry 55.]  IAA employees and IAA's agents also provided McQueen and Pienknagura information requested for the purpose of rendering legal advice.  [*See, e.g., in camera* Filing No. 160-13 log entry 69.]  Moreover, Travelers recognized McQueen and Pienknagura as IAA's attorneys as it addressed and sent its reservation of rights letters to them.  [*See, e.g.,* Filing No. 169-17.]  Thus, the attorney-client privilege extends to McQueen's and Pienknagura's communications providing legal advice.

IAA further withheld documents containing communications with its BKD accountants, which Travelers also asserts must be produced as these communications fall within the ordinary course of IAA's business.[5]  As agents of IAA, communications containing legal advice between IAA's accountants at BKD and IAA's counsel are privileged.  IAA submitted *in camera* a letter sent from IAA's counsel to BKD discussing IAA's ongoing litigation and the potential cost of each lawsuit.  Such a communication is protected because it includes legal advice concerning the outcome of pending litigation.  [*In camera* Filing No. 187.]  Other *in camera* documents reveal that drafted letters to IAA's auditors included legal advice.  [*See, e.g., in camera* Filing No. 160-13 log entry 45.]  Thus, communications to IAA's accountant that contain legal advice are protected.  IAA's privilege log includes communications between BKD accountants outside the presence of IAA's counsel.  These communications are also protected because BKD's

---

[5]  As IAA points out, Indiana law protects accountant-client communications as privileged.  Ind. Code § 25-2.1-14-1.  However, "Indiana courts disfavor such statutorily created privileges and therefore strictly construe them to limit their applications.  Not only must the party asserting privilege establish each of its essential elements; it must also invoke the privilege on a document-by-document basis."  *Pain Center of SE Indiana, LLC v. Origin Healthcare Solutions LLC,* No. 1:13-cv-00133-RLY-DKL, 2015 WL 2166708, at *2 (S.D. Ind. May 8, 2015).  IAA fails to explain why the accountant-client privilege is appropriate for the documents it withheld, and absent such articulation, the moving party may not use this privilege to avoid discovery.  *Pain Center of SE Indiana, LLC,* 2015 WL 2166708, at *2.

accountants expressly discuss counsel's legal advice.  [*See, e.g., in camera* Filing No. 160-15 log entries 166, 167.]

Lastly, Travelers argues that IAA's privilege logs are improper, vague, and subject to waiver.  Travelers objects to IAA's privilege log descriptions because they vaguely explain documents created by Ice Miller, inadequately assert privilege for legal advice on spreadsheets, emails, or memoranda without further explanation, and inadequately describe communications on complying data and preparing work product.  The Court disagrees.  IAA's privilege log adequately describes privileged drafts of proof of loss letters authored by Ice Miller sent to IAA for client review [*see, e.g.,* Filing No. 160-11 log entries 33, 36], as well as email correspondence between IAA's counsel discussing a telephone call with Travelers' adjuster and providing legal advice regarding that call [*see, e.g.,* Filing No. 160-14 log entry 45].  Moreover, IAA's description of emails containing legal advice on IAA's efforts in assembling data and preparing documents for Travelers [*see, e.g.,* Filing No. 160-14 log entry 498] and emails to prepare work product that relates to documents requested by Travelers are adequate [*see, e.g.,* Filing No. 160-14 log entry 91].  IAA provides enough of a factual basis to properly establish its evidentiary privilege without giving away privileged information.  Fed. R. Civ. P. 26(b)(5)(A); *Novelty, Inc. v. Mountain View Mktg., Inc.,* 265 F.R.D. 370, 380 (S.D. Ind. 2009).

However, IAA's privilege log entries describing its attachments are inadequate.  IAA fails to indicate the author of certain withheld attachments, which hinders Travelers' ability to evaluate the applicability of the privilege or production under Rule 26(b)(5)(A).  For instance, IAA's 7/2/14 supplemental privilege log includes several communications from IAA's corporate designee, Robert Duncan, to IAA's Board of Directors that include unauthored reports IAA claims are protected by attorney-client privilege.  However, it is not clear who prepared the

report and whether the author was an attorney or if the information was prepared by attorney request.  [*See, e.g.,* Filing No. 160-11, at ECF p. 5, 16, 20; Filing No. 160-13, at ECF p. 7, 16.] Thus, IAA must supplement its privilege log so that it includes the author of the attachments withheld.

Thus, the Court finds Travelers' arguments concerning attorney-client privilege communications are somewhat justified.  IAA must produce communications that contain underlying facts subject to discovery.  [*See, e.g., in camera* Filing No. 160-10 log entry 11; Filing No. 160-13 log entries 11, 45, 79, 89, 121, 122, 190; Filing No. 160-14 log entries 5, 7, 8, 11, 21, 23, 294, 296.]  IAA must supplement its privilege log to include the authors of the attachments it purports are protected by attorney-client privilege.

### B.  Work-product doctrine

Rule 26(b)(3) prohibits production of documents prepared in anticipation of litigation, except when the documents are otherwise discoverable and the seeking party shows that it has substantial need for the materials to prepare its case.  To show substantial need, the seeking party must show it cannot obtain a substantial equivalent by other means without undue hardship.  Fed. R. Civ. P. 26(b)(3).  To be protected under the work-product doctrine, the primary motivating purpose behind the creation of the document or investigative report must be to aid in possible future litigation.  *Indianapolis Airport Authority v. Travelers Property Cas. Co. of America*, No. 1:13-cv-1316-JMS-TAB, 2015 WL 1013952, at * 7 (S.D. Ind. Mar. 9, 2015) (quoting *Binks Mfg. Co. v. Nat'l Presto Industries, Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)).

### 1.  Travelers' work-product designations

IAA argues that Travelers failed to show that the primary motivating purpose behind the creation of some of its work-product documents was to aid in possible future litigation.

15

Specifically, IAA takes issue with Travelers' work-product designation for documents seeking legal advice on tolling the statute of limitations and drafting the claim decision letters. As IAA points out, Travelers' employees routinely sought legal advice on tolling, drafting letters, and saving documents before it anticipated litigation. Indeed, Travelers asserts no additional facts to suggest that the primary purpose of these communications post-dating August 17 was to seek legal advice for litigation and not merely routine legal advice. *See Binks Mfg. Co. v. National Presto Industries, Inc.,* 709 F.3d 1109, 1118-19 (7th Cir. 1983). Without more information, the work-product doctrine does not shield these communications.[6] *See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 152 F.R.D. 132, 135 (N.D. Ill. 1993) (noting that the scope of privileges should be confined to the narrowest possible limits). Even so, these documents need not be produced. The documents are protected by attorney-client privilege as they are communications seeking legal advice. Travelers is not required to produce any of these documents, but must revise its privilege log to remove the work-product designation from routine legal advice.

   2. IAA's work-product designations

   Travelers argues that IAA over-designated communications as work product because IAA withheld communications starting August 10, 2012, the date Travelers denied coverage for IAA's Proof of Loss. IAA asserts that Travelers' August 10, 2012, letter denying coverage prompted IAA to draft the August 17 letter threatening litigation. According to Travelers, both parties should have anticipated litigation on the same date. However, IAA correctly notes that the parties need not use the same date for the purpose of the work-product doctrine if IAA can

---

[6] As the Court previously indicated, Travelers' attorney instructed his assistant to save case law and relevant documents under certain file names after Travelers anticipated litigation. [*In camera* Travelers' Ex. 4.] These files were created to aid in possible future litigation and related communications included attorney mental impressions. Consequently, they are properly protected under the work-product doctrine.

show it anticipated litigation on a date other than August 17, 2012. *State Farm Fire and Cas. Co. v. Nokes*, 263 F.R.D. 518, 523 (N.D. Ind. 2009).

IAA cites its August 17 letter to support its argument that it anticipated litigation August 10, 2012. Indeed, IAA's August 17 letter expressly references Travelers' August 10 letter stating it "ignores the parties' course of conduct in the handling of this matter over the last several years and suggests that Travelers intends to treat it as a brand new claim." [Filing No. 30-3, at ECF p. 1.] The letter goes on to challenge Travelers' August 10 assertions, concluding that Travelers' requests are unreasonable and "in light of Travelers' letter, and its recent refusal to participate in a meeting to discuss how the parties might proceed toward resolution of this claim, IAA has little confidence that this matter is progressing appropriately toward resolution." [Filing No. 30-3, at ECF p. 4-5.] The Court finds IAA properly established that it anticipated litigation August 10, and documents created thereafter primarily for the purpose of aiding in future litigation are protected under the work-product doctrine.

Travelers also asserts that IAA improperly withheld documents and communications as work product that predate and post-date August 2012. The documents that predate August 10 are appropriately withheld under the work-product designation as they relate to litigation with parties other than Travelers. *Goodyear Tire and Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532, 538 (S.D. Ind. 1999) ("If a document is protected by the work product privilege, it is protected in any litigation, not only in the litigation for which the document was prepared.") To determine whether IAA appropriately designated post-dated communications as work product, the Court reviewed IAA's 7/2/14 privilege log.[7] IAA's *in camera* documents reveal that the

---

[7] The Court reviewed IAA's 7/2/14 privilege log as representative of the documents withheld as work product in IAA's remaining privilege logs. As such, the Court's finding as to IAA's 7/2/14 privilege log extends to IAA's remaining work-product designations. *F.D.I.C. v. Fidelity and*

17

primary purpose of some communications was litigation. [*See, e.g., in camera* Filing No. 160-11, log entries 1, 21, 28, 75, 83, 84, 85, 86, 191, 192, 194, 219, 245, 253, 261.]  However, IAA's documents also show that the main purpose behind other communications was to submit IAA's claim to Travelers. [*See, e.g.,* Filing No. 160-11, log entries 81, 82, 195, 200, 201, 202, 203, 210, 211, 212, 214, 215, 218, 222, 223, 227, 229, 234, 235, 236, 237, 239, 240, 243, 244, 246, 249, 256, 265, 266, 279, 280, 283, 284, 285, 286, 287.]  For example, IAA's in-house and outside counsel reviewed and discussed a drafted communication to Travelers' adjuster on May 22, 2013.  Their discussion contains routine legal advice concerning IAA's claim.  [*In camera* Filing No. 160-11 log entry 195.]  Work product does not shield these communications as they were created to serve a primary purpose other than to aid in future litigation.  Still, these communications are protected attorney-client communications and need not be produced.  IAA shall revise its work-product designations in its privilege log to include only communications created for the primary purpose of aiding in future litigation.

Travelers seeks production of communications IAA withheld as work product, claiming that it has a substantial need for these documents.  However, Travelers has failed to establish a legitimate substantial need.  This is in large part due to the fact that Travelers has had access to the underlying facts through other means.  Fed. R. Civ. P. 26(b)(3).  As IAA sets forth in its surreply, "IAA has produced all of the underlying documents, including contractor invoices, cancelled checks and bond statements, supporting its damages" that are designated as work-product communications.  IAA also argues "Travelers has deposed Rich Potosnak, Robert Thomson, Mark Flandermeyer, and Robert Duncan, all of whom testified regarding the

---

*Deposit Co. of Maryland,* No. 3:11-cv-19-RLY-WGH, 2013 WL 5938149, at *1-2 (S.D. Ind. Nov. 6, 2013).

preparation and/or submission of IAA's insurance claim; how the claim was calculated; and the underlying documents utilized in determining the amount of IAA's claimed damages." [Filing No. 197, at ECF p. 8.]  Moreover, IAA's work-product communications contain mental processes, which even upon a showing of substantial need are protected from disclosure. *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000). Documents designated as work product need not be produced.

   *C.  IAA's hybrid experts*

   Travelers submits that it requested production of the documents IAA provided to its hybrid experts Flandermeyer and Potosnak to consider in formulating their opinions, but IAA has refused to produce them.  According to IAA, it identified by Bates number the documents reviewed by Flandermeyer and Potosnak.  Moreover, IAA asserts Flandermeyer's disputed quick access personal file included materials that IAA previously produced or made available to Travelers to inspect and copy.  This fact is confirmed by IAA's December 31, 2014, letter identifying the Bates numbers for documents Flandermeyer would use in his deposition [Filing No. 169-22, at ECF p. 2-4], and noting in a December 16, 2014, letter that Flandermeyer's testimony would be based on documents located in the job file that was produced or otherwise made available for Travelers' inspection.  [Filing No. 197-2, at ECF p. 3.]  Flandermeyer's deposition further supports that IAA provided Travelers the relevant information its hybrid experts reviewed.  Flandermeyer testified at his deposition that he only reviewed the information IAA identified as responsive and non-privileged in its December 31, 2014, letter.  [Filing No. 169-10, at ECF p. 4, 6.]  IAA has already produced and identified the documents considered by its hybrid experts and need not produce additional information.  *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, (7th Cir. 2002) ("Although there is a strong public policy in favor of

disclosing relevant materials, Rule 26(b)(2) . . . empowers district courts to limit the scope of discovery if the discovery sought is unreasonably cumulative or duplicative.").

## III. Conclusion

For the foregoing reasons, IAA's supplemental brief [Filing No. 130] is granted in part and denied in part.  Travelers shall produce privileged documents discussing expense categorization [*in camera* Travelers' Ex. 27] and supplement its privilege log to more accurately reflect its privileged communications.  Travelers shall further supplement its privilege logs so that communications containing routine legal advice that were not created for the primary purpose of aiding in possible future litigation are not designated as work product.

Travelers' motion to compel [Filing No. 159] is also granted in part and denied in part.  IAA shall produce privileged communications containing underlying facts.  [*See, e.g., in camera* Filing No. 160-10 log entry 11; Filing No. 160-13 log entries 11, 45, 79, 89, 121, 122, 190; Filing No. 160-14 log entries 5, 7, 8, 11, 21, 23, 294, 296]  Moreover, IAA shall supplement its privilege log to include the author of privileged attachments and reclassify communications designated as work product that have a primary purpose of submitting its insurance claim.  The production/supplementation ordered in this entry shall be completed within 28 days.

Date:  8/7/2015

_____

Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana

Distribution:

Michele A. Chapnick
GREGORY AND MEYER P.C.
mchapnick@gregorylaw.com

Jenny R. Buchheit
ICE MILLER LLP
jenny.buchheit@icemiller.com

Nathaniel M. Uhl
ICE MILLER LLP
nate.uhl@icemiller.com

Rebecca J. Seamands
ICE MILLER LLP
rebecca.seamands@icemiller.com

Amanda M. Buishas
JOHNSON & BELL, LTD.
buishasa@jbltd.com

Rick L. Hammond
JOHNSON & BELL, LTD.
hammondr@jbltd.com

Samuel R. Stalker
JOHNSON & BELL, LTD.
stalkers@jbltd.com